THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* IRVING SACKS, Appellant.

Argued December 6, 1937; decided January 11, 1938.

*Harold H. Corbin* and *Edward J. Bennett* for appellant. Proof of the value of the articles sold or delivered was essential to establish that the rate of return intended or received was in excess of six per cent. Failure to prove disparity between such value and the amount to be paid by the alleged borrower is fatal to any claim of usury. (*Schermerhorn* v. *Talman,* 14 N. Y. 93; *People* v. *Silverberg,* 160 N. Y. Supp. 727; 171 App. Div. 914.)

*William Copeland Dodge, District Attorney (James J. Wilson* of counsel), for respondent. Value of the articles pawned was and is immaterial because nothing was sold; the entire transaction was a loan. (*Quackenbos* v. *Sayer,* 62 N. Y. 344; *Schermerhorn* v. *Talman,* 14 N. Y. 93; *Fiedler* v. *Darrin,* 50 N. Y. 437.) If any count in the information is proved, the judgment must stand. (*People* v. *Faden,* 271 N. Y. 435.)

CRANE, Ch. J. The defendants have been convicted of the crime of violating section 340 of the Banking Law (Cons. Laws, ch. 2), and the judgment has been affirmed by the Appellate Division on the ground that the evidence was sufficient to sustain the conspiracy count in the information, thereby indicating that as to the other count the evidence was insufficient in the opinion of that court. The information is in two counts: The first charges the crime of violating section 340 of the Banking Law, in that the defendants did unlawfully engage in the business of making loans " of money, credit, goods and things in action in the amount of three hundred dollars or less, and charging, contracting for and receiving a greater rate of interest therefor than permitted by law without being lawfully authorized by article 9 of the said Banking Law." The second count charges the defendants with the crime of conspiracy in that they conspired with each other and with divers other persons to commit a crime, " to wit,

the crime of violating sections 340 and 357 of the said Banking Law * * * that is to say, unlawfully to engage in the business of making loans of money in amounts of three hundred dollars or less without being duly licensed so to do."

Section 340 of the Banking Law reads: " No person * * * shall engage in the business of making loans of money, credit, goods, or things in action in the amount or of the value of three hundred dollars or less and charge, contract for, or receive a greater rate of interest, discount, or consideration therefor than the lender would be permitted by law to charge if he were not a licensee hereunder except as authorized by this article and without first obtaining a license from the superintendent of banks."

Section 357 of the Banking Law refers to loans made by those not engaged in the business.

The dominant fact, upon which the crime of violating these sections must be based, is a loan — a loan for which excessive interest is received. The transaction may take many forms. For the purpose of evading the statute it may have the appearance of a legal transaction but, if in essence or in fact, the transaction be a loan, and excessive interest taken, a crime has been committed.

The defendant Irving Sacks has been in the installment business in the city of New York for thirty years. His place of business at the time of the trial was 100 West Forty-second street, on the fourth floor. He testified: " I sell clothing, jewelry, radios, haberdashery, almost anything anybody could use for personal use, electrical appliances or furniture and so on, etc., on installment plan. I occupy approximately at 100 West 42nd Street, four thousand square feet for showrooms and stockrooms. My inventory value of all kind of merchandise amounts from fifty to sixty-five thousand dollars. I have another place of business at 1370 Broadway, where I have been thirteen or fourteen years." In the latter store Sacks sold jewelry and novelties for cash and on installment, as the case might be, and his average stock in that store

for a number of years had been inventoried at forty thousand dollars. The method of the installment business is to require security, and Sacks described it as follows: " Selling on installment, we must have for our protection when a man buys anything such as an assignment of wages or a mortgage or a confession. It all depends upon the customer. Sometimes a promissory note, whatever the case may be." The business was transacted in the name of the Metropolitan Credit Company, and employed fifteen to twenty salesmen, with an office staff of approximately twenty-five employees. The company paid its salesmen a commission of twenty per cent. Collections required one and one-half to two years before the final payment was made.

The defendant Samuel M. Morton had been selling jewelry on the installment plan for years. He had been sales manager for O. F. Bale & Company, 21 Maiden lane, and said that his duties were " capacity as outside sales manager, meaning I trained salesmen how to sell merchandise on installment such as clothing, watches, etc. to people that held a job, industrial workers, factory workers, chain store operators, etc., elevator operators, also city employees." He met Mr. Sacks at the jewelers' convention at the McAlpin Hotel in 1932, and thereafter, in 1935, went with Sacks as a salesman to concentrate on a special type of business, " city employees exclusively." Sacks said to him: " city employees, if they miss payments we put the garnishee in against them and I receive my money."

Morton pleaded guilty and turned State's evidence. He was the first witness called by the People, and his description of the scheme as planned I now outline. Sacks showed him a letter and said: " ' This is the proposition that brings the people to your place; you will be astonished to see the amount of response. Take a copy of this letter, have the letters printed, take an office space so you may have privacy to yourself, operate at the place of business wherever you may find the location. I will advance all your expenses that may be involved in

respect to the office space. When a customer comes into your place, well, you know and I know that they are not going to come in for merchandise. What they want is loans. This letter is going to bring the people to your office. The rest of that is up to you to handle then. When they come to your office with this particular letter asking you for a loan, you will switch them, in a scientific way. Tell them you are not a finance company, tell them you are not in the loan business or banking business, but you can give them something in merchandise to hold or satisfy their demands. You get the name of the prospective buyer. Call me up at the office. I will have that person cleared for you within a few minutes. I have a connection, Secan Service, for which I pay fifty cents for each name that is cleared; so it will put you in a position, it will enable me to tell you whether or not, that person has not too many garnishees ahead. Regardless of the amount of the sale you need not attempt to collect any deposit on it. There is no deposit required on it whether it is a three, five or seven hundred dollar sale.' "

A letter was sent out in the form prepared by Sacks, and is People's Exhibit 1, which read:

" S. M. Morton
287 Broadway
New York, N. Y.
Room 402
Corner Reade St.

" Diamonds
Watches
Jewelry
" CITY EMPLOYEES
" $50.00 to $200.00
Bring Your Badge
" No Red Tape No Co Makers
Yours very truly,
S. M. MORTON."

This letter was subsequently changed to another form, Plaintiff's Exhibit 2, which reads as follows:

" Phone
WIsconsin 7-2313
" METROPOLITAN CREDIT CO.
General Merchandise
100 West 42nd St.
Corner 6th Ave.
New York, N. Y.
" CITY EMPLOYEES
" It Will Be to Your Interest
To See Me
Your Credit Is Good
$50–to–$500
Diamonds and Jewelry
" 2 Years or Longer in Which to Pay
No Red Tape — No Guarantors — No
Investigations
" Strictly Confidential
Yours very truly,
METROPOLITAN CREDIT CO."

After these letters had been sent out to city employees, many responded, apparently believing that they could, through Morton or the Metropolitan Credit Company, obtain a loan. This was a deception practiced by Sacks and Morton for the purpose of getting people into the stores to buy jewelry or merchandise. No loans of money were made by Morton or Sacks or by the Metropolitan Credit Company. When the prospective customer or borrower came to Morton, or was turned over to Sacks or to the employees of the Metropolitan Credit Company, he was told that they were not in the loaning business; they were not bankers or financiers; that they merely sold jewelry and merchandise on the installment plan. When the borrower said he had to have cash or money, and was not interested in buying, he was informed that he could buy the jewelry and thereafter could do what he

pleased with it — borrow on it at a pawnshop or a finance company. As this seemed to satisfy those who were pressed for money, a sale was made, the customer paying for the jewelry by confessing judgment, which was immediately filed with the Comptroller of the city. By thus garnisheeing the city employee's salary Sacks received every month an installment on the price of the jewelry sold. Although he received no cash from the sale he did receive security in the form of a confession of judgment, so that in the course of time he would receive full payment unless the employee died or was discharged. Some of these purchasers, city employees, took the jewelry to pawnshops or finance companies and procured a loan. The persons or concerns making the loan were in no way connected with the defendants; it was conceded upon the argument in this case that, after Sacks had parted with the jewelry to the customer he lost all title in and control over it; in no way could he get it back except by repurchasing it.

Here was a clever, tricky scheme — a fraud, if you will — to procure customers for merchandise. The customers did not want the merchandise; they wanted money; they wanted to borrow money. Taking advantage of their necessities, Sacks sold them merchandise, upon which they could obtain money from others, but not from him. The fact is, however — and it is the underlying fact in these transactions — that Sacks made no loans; he made sales of jewelry, of property, in which title passed to the purchaser as fully and completely as on any other sale. The price was secured by the confession of judgment and the installment payments came from the customer's salary. Sacks did not care what became of the jewelry; the customer could keep it or give it away; Sacks had in its place a judgment, secured by the garnishee process. The loan subsequently made upon the property or jewelry was made by persons over whom Sacks had no control.

It is the tricky device by which Sacks got customers into his store which has infected the whole transaction and led to the belief that he was making illegal loans in violation of the Banking Law. He made no loans; he sold property to credulous purchasers who, having obtained the property, for which ultimately they would have to pay, procured loans from others. Sacks' transaction was a sale, not a loan. The evidence does not warrant his being convicted of violating the above sections of the Banking Law.

There is even another weakness in this conviction. The sections of the Banking Law, to which we have referred, are aimed at usurious interest. There is no evidence in the case to show the value of the jewelry sold by Sacks. The merchandise sold may have been worth the price or the amount of the judgment confessed. Naturally we assume that such is not the case, or Sacks would not be doing business in this way; but in a criminal case we cannot guess or surmise at what might or must have been. Even had Sacks loaned his property or his jewelry instead of selling it, and was to receive back pay for the use of it, there must at least be some evidence to show that the pay received so exceeded the value of the use of the property loaned as to amount to usury. There is no such evidence in this case.

The judgment of Sacks' conviction should be reversed and the information dismissed.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur; FINCH, J., concurs in result on the last ground stated in the opinion.

Judgments reversed, etc.