MESABA LOAN COMPANY v. E. JACK SHER AND OTHERS.
CITIZENS MORRIS PLAN COMPANY v. L. D. PARKE.[1]

October 28, 1938.

Nos. 31,842, 31,843, 31,888.

[1]Reported in 282 N. W. 823.

*M. J. Mulvahill*, for appellant Mesaba Loan Company.

*Nichols, Mullin & Farnand, James E. O'Brien,* and *Arthur P. Jensen*, for appellant E. Jack Sher.

*Van Fossen & Van Fossen*, for appellant L. D. Parke.

*Junell, Fletcher, Dorsey, Barker & Colman* and *H. C. Carlson*, for Citizens Morris Plan Company, respondent.

PETERSON, JUSTICE.

In each case the plaintiff sues on a promissory note for a loan made pursuant to the plan of lending commonly known as the Morris Plan, authorized by L. 1933, c. 246 (3 Mason Minn. St. 1936 Supp. §§ 7774-25 to 7774-35) under which plaintiffs are organized as industrial loan and thrift companies. The statute [7774-28(b)] authorizes such companies to engage principally in the business of making small loans "upon the security of co-makers, personal chattels or other property, exclusive of real estate, for a period not to exceed one year; * * *" A certificate of authorization to engage in the business is required from the department of commerce. Such corporations are subject to the supervision of the commissioner of banks, who among other things is required to make an examination at least once each year to satisfy himself that they are complying with the requirements of the act. They have the right, with the

consent of the department of commerce, to sell and issue for investment, or to be pledged as security for a loan made contemporaneously therewith or otherwise, certificates of indebtedness, under any descriptive name, which may bear interest and which may require the payment to the corporation of such amounts from time to time as the terms may provide, and permit the withdrawal of the amounts paid upon the same, in whole or in part, from time to time, and the credit of amounts thereon upon such conditions as may be set forth therein. Upon the maturity of a note for which such a certificate of indebtedness is pledged, the borrower may, at his option, keep the certificate as an investment or surrender it and apply the amounts paid thereon in payment of the debt. The plan of lending permits the deduction in advance of one year's interest at not to exceed the rate of eight per cent discount per annum, and requires the borrower to purchase and pledge with the company a certificate of indebtedness in the amount of the loan. Such certificate is payable by the borrower in equal weekly, bi-weekly, or monthly instalments, with or without interest, extending over substantially the period of the loan. Certain charges are authorized for making the loan. The statute [7774-28(b)] expressly provides that payments on the certificate are "not to be construed as payments on the loan secured thereby."

The complaint in each case alleges that the defendant executed a note to the plaintiff and purchased and pledged a certificate of indebtedness in the amount of the loan as collateral security for its payment. Each note provides that it shall become immediately due and payable at the option of the holder if default be made in any of the payments required by the certificate so pledged, with right to foreclose the collateral. In the Citizens Morris Plan case the note is for $200, of which Parke received $182. The $18 deduction represents one year's interest at 7 per cent and $4 handling charge. The certificate of indebtedness is payable at the rate of $4 per week for 50 weeks.

In the Mesaba Loan Company case the note is for $520, of which Sher received $478.40. The $41.60 deduction represents one year's interest at 7 per cent and a $5.20 handling charge. The certificate

of indebtedness is payable at the rate of $10 per week for 52 weeks. The defendants have defaulted in payment of the instalments, for which the plaintiffs have declared the whole amount of the notes to be due.

Plaintiffs have the necessary certificates of authorization and have been and now are operating under the supervision of the commissioner of banks.

The defense in each case is usury. The claim is that the plan of lending, while it stipulates for a rate not to exceed eight per cent interest per annum in advance, in reality permits a charge in excess of twice the stipulated rate because the amortization of the loan by the weekly payments reduces the term of the loan for purposes of calculating interest to one-half of the stipulated number of weeks, in consequence of which the actual rate of interest is approximately double the stipulated one, and that in these cases, if the handling charges were eliminated from the calculation, the interest would be about 14 per cent. It is urged that the statute is unconstitutional upon the grounds that (1) it is class legislation violative of the provisions of the state constitution, art. 1, § 2, and art. 4, § 33, prohibiting special legislation, and the equal protection clause of the fourteenth amendment of the constitution of the United States for the reasons that (a) the statute arbitrarily creates a class of money lenders upon which it confers the special privilege to charge higher rates of interest than those operating under the general law; (b) that the statutory classification is arbitrary because it confines the right to engage in the business to corporations organized and operating under the statute; and (c) that the classification is arbitrary because it excludes from the benefits of the statute banks, trust companies, building and loan associations, and loans upon real estate; and (2) that the statute is a special law fixing the rate of interest, violative of art. 4, § 33, of the Minnesota constitution, which provides that the "legislature shall pass no local or special law regulating * * * the rate of interest on money."

In the Mesaba case the court below sustained the contention of unconstitutionality, but permitted plaintiff to recover $478.40, the amount actually received by the defendant, with interest at the

legal rate, upon the ground that there was no usury because of want of usurious intent. In the Citizens Morris Plan case the court held the statute constitutional, and plaintiff recovered the amount demanded.

■ The statute is not class legislation and does not violate the principles of classification in the respects claimed, since it does not distinguish between lenders operating under the statutory plan and other money lenders. Equal protection of the laws under the fourteenth amendment and the prohibition of special legislation under the state constitution only require that the rights of all persons must rest upon the same rule under similar circumstances. State ex rel. Equity Farms, Inc. v. Hubbard, 203 Minn. 111, 280 N. W. 9; State ex rel. Young v. Standard Oil Co. 111 Minn. 85, 126 N. W. 527; Minnesota W. G. Co-op. M. Assn. v. Huggins, 162 Minn. 471, 203 N. W. 420; Hartford Co. v. Harrison, 301 U. S. 459, 57 S. Ct. 838, 81 L. ed. 1223. The same rule is applied to industrial loan and thrift companies as is applied to other lenders with respect to the rate of interest which may be charged and the right to receive payment of interest in advance. Such companies are authorized by § 4(b) of the act to deduct in advance one year's interest on loans at the rate of eight per cent, which other lenders are permitted to do by 2 Mason Minn. St. 1927, § 7038. See Smith v. Parsons, 55 Minn. 520, 57 N. W. 311; Blindman v. Industrial L. & T. Corp. 194 Minn. 462, 260 N. W. 867. The expenses incident to the loan are authorized by the statute and hence are not considered as part of the interest. Independent of statute, parties ordinarily may contract that the borrower shall pay the expenses incident to the loan. Lassman v. Jacobson, 125 Minn. 218, 146 N. W. 350, 51 L.R.A.(N.S.) 465, Ann. Cas. 1915C, 774; Hatcher v. Union Trust Co. 174 Minn. 241, 219 N. W. 76. The statute certainly may permit what the parties may do by contract.

The actual rate of interest under the plan of lending under c. 246 is not, as claimed, twice that stipulated, due to the instalment payments whereby the principal of the loan is progressively reduced so that on the average only one-half thereof is outstanding for the entire term, with the result that interest is charged on twice the

amount of which the lender has the use. In the instant case it is claimed that the actual rate is not 7 per cent as stipulated, but in excess of 14 per cent per annum, due to the amortization. Experts on the subject support the contention by calculations based upon the assumption that the loans were amortized as claimed. If the fact assumptions were true, the contention would have to be sustained. In that situation, it would be necessary to consider whether a valid distinction was made between lenders under the statutory plan and other money lenders as a basis of classification and determine whether that classification is constitutional under the prohibition of the state constitution against special legislation and the requirement of equal protection under the fourteenth amendment. But the facts are not as claimed. The fundamental error in the argument is that it entirely ignores the provision of the statute that such payments are to apply on the certificate of indebtedness and are not to be construed as payments on the loan secured by the certificate. Section 4(b). Neither the note nor any part of it is due and payable until maturity. The payments on the instalment certificate are being made while the note is maturing. At the maturity of the note the borrower may elect to pay the note and keep the certificate, or he may surrender the certificate and have the proceeds applied in payment of the note. In any event, the title to the security remains in the borrower until it is applied, if at all, on the debt. The transaction is a pledge, not payment. It is no different than if the borrower had purchased a security from a third person on the instalment plan and pledged it with the lenders. See People v. Sacks, 276 N. Y. 321. Such a plan of financing, unless used as a device for usury, is permissible in the absence of statute. Where it has the sanction of the statute, it can hardly be claimed to be a usurious device. In Interstate B. & L. Assn. v. Goforth, 94 Tex. 259, 59 S. W. 871, the court held in a case analogous to the instant one that monthly payments upon stock purchased from the plaintiff and pledged as security for a loan did not constitute payment of the debt, but simply provided security for its future payment by the purchase of the stock pledged as collateral. The distinction is sound and controlling.

The defaults were declared by plaintiffs before the year had run for which the interest was paid in advance. Consequently, plaintiffs have received more interest than permitted by the statute for the period for which the borrower had the money. Since no claim was made below or in this court that the lender is not entitled to the whole interest in such a situation, we do not decide the question. Similar acceleration clauses have been sustained in Morris Plan Co. v. Currie, 161 N. Y. S. 292, and Morris Plan Co. v. White, 140 Misc. 775, 251 N. Y. S. 379, but this question was not raised or decided. We only decide that such an acceleration clause does not make the loan usurious. A contract valid in its inception is not rendered usurious by the lender's exercise of the option to accelerate the maturity of the loan upon the borrower's default. Sharp v. Mortgage Security Corp. 215 Cal. 287, 9 P. (2d) 819; Cissna Loan Co. v. Gawley, 87 Wash. 438, 151 P. 792, L. R. A. 1916B, 807, Ann. Cas. 1917D, 722, and note 725. In Cissna Loan Co. v. Gawley, *supra*, the interest at the excessive rate after the accelerated maturity was held to be in the nature of liquidated damages or penalties to be enforced only to the extent that they are not unconscionable. But that case involved an executory contract for uncollected interest. In this case, the interest has been collected. The question, if raised, would not be whether payment of the interest may be enforced, but how the interest already paid should be applied. See Unity Plan Finance Co. Inc. v. Green, 179 La. 1070, 155 So. 900.

■ A party attacking the constitutionality of a statute must show that it affects his rights in an unconstitutional manner. That it so affects the rights of others is no concern of his. He may champion his own, but not the rights of others. State v. Hoffman, 159 Minn. 401, 199 N. W. 175; Kerst v. Nelson, 171 Minn. 191, 196, 213 N. W. 904, 54 A. L. R. 495; Henneford v. Silas Mason Co. Inc. 300 U. S. 577, 57 S. Ct. 524, 81 L. ed. 814; Bourjois, Inc. v. Chapman, 301 U. S. 183, 57 S. Ct. 691, 81 L. ed. 1027, 110 A. L. R. 732. Defendants cannot assert the unconstitutionality of the exclusion of banks, trust companies, building and loan associations, and loans on real estate, because they do not belong to any of the excluded classes and are not prejudiced by the exclusions.

■ Furthermore, the statute contains a separability clause declaring that the act would have been passed irrespective of the unconstitutionality or invalidity of any part thereof. Notwithstanding the possible unconstitutionality of parts of the statute, such a clause will save the remaining portions at least where they constitute an operative statute. If the exclusions were invalidated, the remaining portions, which are determinative of this case, can be saved under the rule. Carmichael v. Southern C. & C. Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327.

■ Nor is c. 246 a special law regulating the rate of interest. It simply applies to loans made thereunder the same rate of interest permitted by the general statute.

In the Mesaba Loan Company case the judgment is modified to conform with the views herein expressed. In the Citizens Morris Plan case the judgment is affirmed.