STATE EX REL. BERLAND SHOE STORES, INC. v. LLOYD J. HANEY.[1]

June 21, 1940.

No. 32,466.

[1]Reported in 292 N. W. 748.

 

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *George B. Sjoselius,* Special Assistant Attorney General, 'for appellant (respondent below).

*O'Brien, Horn & Stringer,* for respondent (relator below).

STONE, JUSTICE.

On *certiorari,* the district court vacated the certification, made by Mr. Haney, as labor conciliator of the department of labor and industries, of a bargaining agent for employes. He appeals.

The case is the first to come to us under the Minnesota Labor Relations Act, L. 1939, c. 440, 3 Mason Minn. St. 1940 Supp. §§ 4254-21 to 4254-40. Thereby was established a "division of conciliation" in the department of labor and industries. It was put under control of the labor conciliator. The only portion of the act with which we are now concerned is § 16, having to do with the selection, with or without intervention of the conciliator, of representatives by employes for collective bargaining. Its declaration, now important, is that:

"Representatives designated or selected for the purpose of collective bargaining by the majority of the employes in a unit appropriate for such purposes shall be the exclusive representatives of all the employes in such unit for the purposes of collective bargaining * * *"

There is a proviso that any individual or group shall have the right to present grievances to their employer in person or through representatives of their own choosing.

The section proceeds to authorize the conciliator, upon request of any of the parties, to investigate any controversy concerning representation and "certify to the parties in writing the name or names of the representatives that have been designated or

selected." It is provided also that "in any such investigation, the labor conciliator may provide for an appropriate hearing."

Respondent has a retail shoe store in St. Paul. We infer that it was an "open shop" when, on September 27, 1939, Retail Clerks Union, Local No. 2 (hereinafter mentioned as "the local") demanded that respondent enter into a contract covering hours of labor, rates of pay, and conditions of employment. The demand amounted to an ultimatum. A form of the contract desired was submitted to the store manager, and, forthwith, the local, in writing, requested the assistance of the labor conciliator.

During the afternoon of October 3, on his invitation, the parties met with the conciliator, the local being represented by Mr. Brennan, and respondent by its northwest supervisor, Mr. Spivak. Mr. Brennan, for the local, accused respondent of improper anti-union activities, going on to say that "at this time the union represented a majority of the employes, and they were demanding that a contract be negotiated and signed." On his part, Mr. Spivak not only denied the charge of "coercion on the employes," but also "challenged the right of the union to majority representation."

Thereupon the conciliator suggested that the local "submit a list of authorization cards and that the company [respondent] submit a list of the employes." He went on to say that, "after comparing the two, he would certify the result." The record of that meeting proceeds thus: "Mr. Spivak was to ask for permission from his home office at St. Louis to negotiate this contract and, upon receiving it, felt that if the union represented the employes, they could proceed with the negotiations." The record of the meeting concludes with the statement that "the company is to furnish us with a list of their employes, and the union is to submit the list of authorization cards, and we are to meet again jointly Friday at 2 p. m."

At the adjourned meeting Mr. Spivak was again present for respondent, and Mr. Brennan and three others for the local. That is, both parties to the controversy were present by designated representatives. Those of the local succeeded in having

certain names stricken from the company's list of employes, because of casual employment or supervisory capacity. Mr. Spivak apparently did not question the genuineness of any of the authorization cards. The discussion concluded: "The Conciliator announced that the union had a majority and was entitled to certification as the exclusive representative of the employes" and "that he would confirm this announcement in writing to the parties concerned."

Promptly thereafter the conciliator formally and in writing did certify the local as bargaining agent for the employes in respondent's store. With the negotiations which followed, we are not concerned. Apparently they failed and a strike resulted.

Most of the argument has to do with the construction of the statute [§ 16(b)] from the standpoint of due process. For respondent it is argued that, in order to pass the constitutional test, the law must be construed as requiring a hearing, with notice, as condition precedent to the certification of a bargaining agent. It is summed up in this characteristically compact sentence of the learned trial judge:

"It will not do to say that the employer has no interest in the determination of the bargaining agents with whom he is required to negotiate."

Of course it was not thereby meant to suggest that the employer may participate in or interfere with the action of his employes in selecting a bargaining agent. Rather and only the thought was that the employer is entitled to a hearing preceding such certification.

Assuming the soundness of such argument for respondent, so far as it presents the law, we are yet constrained to say that it has no application to the facts. It seems to us quite plain that the conciliator was so well advised that he afforded respondent a full and fair hearing, which was as comprehensive on the question of representation as respondent at the time seemed to desire. Our references to the record show the extent to which respondent participated. Mr. Spivak made the issue very clear in his chal-

lenge of the right of the local to represent the employes. Each side submitted its lists. They were examined and to some extent challenged. Neither, apparently, wanted to submit more by way of evidence or argument. The issue so submitted to the conciliator was decided by his certification of the right of the union to representation.

There was here no decision "upon the strength of information secretly collected and never yet disclosed." There was no "curt refusal" to disclose the factual ground of decision, nor concealment of the "underlying proofs" such as were fatal to the rate order in Ohio Bell Tel. Co. v. Public Utilities Comm. 301 U. S. 292, 300, 57 S. Ct. 724, 81 L. ed. 1093.

In such a case, where the party having the right to notice and hearing is accorded a full and fair hearing, in which he participates without objection, it is thereafter too late for him to attack the whole proceeding and its result, otherwise unchallenged, upon the ground that he was entitled to notice. There is a waiver of notice under the rule of such cases as Peterson v. Board of Supervisors, 199 Minn. 455, 272 N. W. 391. Possibly it would be better to say that where, without notice, the adversary parties have joined in the hearing without objection, the requirement of notice has simply become inoperative. Its subject matter has disappeared and its sole purpose accomplished because the parties have made general submission to jurisdiction. If a party "actually appears in the proceeding, the notice becomes unimportant." 12 Am. Jur., Constitutional Law, § 606. Because, therefore, preceding the conciliator's certification of the local's right to employe representation, there was a full hearing, participated in by respondent without objection, we think it was error to vacate the certification. In consequence, the order under review must be reversed.

So ordered.

PETERSON, JUSTICE (concurring specially).

I concur in the result. The rule announced in Peterson v. Board of Supervisors, 199 Minn. 455, 272 N. W. 391, is unfortunate for the reasons stated in the dissent in that case. All the

more important will those reasons become with the creation of new officials and tribunals whose acts are to be predicated on facts to be first found by them after hearing. That case is applicable only where a party claims to have been denied a hearing to which he is entitled.

Respondent claims the right to be heard upon the selection of the employes' bargaining representative. In my opinion it does not have such a right, and decision ought to be put on that ground. Prior to the enactment of the labor relations act, employes the same as employers enjoyed the right to organize and bargain collectively or refrain from so doing. Incident to the right to organize and bargain collectively was the selection of a bargaining representative. Such right was no different than that enjoyed by others to select their own agents without interference or dictation. Section 10 of the act guarantees that right unimpaired to employes and employers alike.

The right of each to select its bargaining representative is in the very nature of things an exclusive right. Employes are to have no voice in selecting the representative of the employer. The employer is not to interfere or dictate the selection of a representative by employes. "Fifth column" activity on either side is excluded. The right of selection of a representative belonging as it does to each disputant without interference or dictation by the other, the selection by one is a matter of no concern to the other. The employer cannot be heard to question the selection of a representative by the employes without participating in or interfering in the exercise of the employes' exclusive right of selection. Hence the employer cannot be heard on the matter. He may exercise and vindicate his own rights but not those of others. The exercise and protection of the rights of others is no concern of his. Mesaba Loan Co. v. Sher, 203 Minn. 589, 595, 282 N. W. 823. To accord the employer the rights claimed here is to nullify § 10 by judicial construction despite the express declarations of that section that the employes' right to organize and bargain collectively shall remain inviolate.

Enough appears to show that the employer seeks by the hearing to control the selection of the employes' bargaining representative. It has discharged a number of employes from its employment since the selection of a representative by employes. Its contention is that those discharged have no right to vote on the selection of a bargaining representative. If an employer can by discharging employes in this manner control the selection of the employes' bargaining representative, the right of the employes themselves to make the selection will be entirely destroyed. The act does not admit of such a construction in virtue of the provisions of § 10.

It seems to me that it is as idle as it is pointless to cite rate regulation cases like Ohio Bell Tel. Co. v. Public Utilities Comm. 301 U. S. 292, 57 S. Ct. 724, 81 L. ed. 1093. A utility company has a right to be heard on the matter of rate regulation for the simple reason that it has property rights in the utility property whose rates are affected by the regulation. But the idea that an employer has a similar proprietary right in his employes or the free exercise of rights guaranteed to them by the act is contrary to all law and common sense.

I should much prefer to say that the employer had no right to a hearing at all and that no right was denied to it.

