## FREED-GOODALL FURNITURE CO. et al. v. MORRIS PLAN CO.

### No. 31040. Dec. 7, 1943.

Rehearing Denied June 13, 1944.

Application for Leave to File Second Petition for Rehearing Denied Nov. 21, 1944.

*152 P. 2d 902.*

R. R. Linker, J. B. Coppedge, and F. E. Riddle, all of Tulsa, for plaintiffs in error.

Robert L. Cox, of Oklahoma City, for defendant in error.

WELCH, J. Plaintiff sued defendant for balance due on debt evidenced by promissory note and to foreclose on collateral security.

The point in controversy in the trial court was whether plaintiff had reserved and collected usurious interest for which defendant counterclaimed. Otherwise there was no question as to the amount.

Essential facts are that plaintiff was engaged in the business of lending money and also of selling interest-bearing certificates of investment in plaintiff's company to the investing public. When this particular transaction originated defendant gave plaintiff their note for $10,870 due in one year, with interest at 10 per cent per annum after maturity, and assigned as security certain bills receivable or open accounts, and a certain installment certificate of investment in plaintiff's company for $10,870, which was then issued to defendant. Plaintiff made an advance deduction of 8 per cent interest for one year on the face amount of the note. Defendant was to pay for the investment certificate in 12 monthly installments, 11 at $500 each and one at $5,370. The installment certificate accumulated interest at 3 per cent on each payment made on it, and when it was paid up it could be surrendered in payment of the note or the note could be paid otherwise and the certificate held as an investment. The plaintiff sold its investment certificates to persons who were not borrowers and made loans to persons who were not owners or purchasers of investment certificates when there was other satisfactory security. The plaintiff is supervised by the Oklahoma State Bank Commission and is duly licensed to sell its investment certificates.

In this action the defendant sought to go back to three or four former borrowing transactions with plaintiff. Each of them was handled in substantially the same manner as to the installment certificate feature. Defendant sought to connect them up with the present transaction, and it was his theory that the installment payments he made were payments on his note to plaintiff, and that such payments, together with the advance interest deductions on all of the several transactions, amounted to the payment of interest in excess of 10 per cent per annum.

A jury was waived, and after hearing all the evidence the trial court found that the several borrowing transactions were each separate and distinct from the others, and also that in each instance, and particularly in the present

instance, the purchase of the investment certificate was separate from the borrowing of the money. The trial court found that the installment payments were knowingly made on the purchase price of the installment certificate involved in this action, and were not made as payments on the loan.

There was testimony that the defendant never saw the installment certificate here involved, but it was shown that at the time plaintiff received the note sued on, the plaintiff gave defendant a book containing 12 coupons in which appeared a form of the installment certificate. The coupons were numbered consecutively from 1 to 12, each bearing the certificate number and specifying that payment was to be made monthly in the sums above set out. Opposite each coupon was a stub on which appeared the following:

"When properly stamped this stub is a receipt for the amount of your monthly payment which is applied on your installment investment certificate."

It seems clear from the evidence that the installments were paid by defendant according to and upon this plan, and that the trial court properly so found.

It does not appear that this court has heretofore passed upon the exact business plan here involved. We have passed upon similar situations in building and loan company cases. Aetna Building & Loan Association v. Hahn, 82 Okla. 110, 198 P. 331; Collins v. Industrial Savings Society, 78 Okla. 319, 190 P. 670, and Collings v. El Reno Bldg. & Loan Ass'n, 175 Okla. 216, 52 P. 2d 57.

The reasoning of those cases supports the finding and conclusion of the trial court here.

The defendant urges that such rule should be restricted to building and loan cases, and while, as above stated, this court has not heretofore passed upon the exact business plan here involved, we find that the question has been considered in other jurisdictions.

In Morris Plan Co. of Springfield v. Lillie, 265 Mass. 98, 163 N.E. 749, the court considered a plan which was quite similar, if not almost identical, and it was there reasoned that the installment payments were made on the installment certificate of investment, and the action of the trial court in directing a verdict for recovery against the borrower was sustained.

Under citation of Masaba Loan Co. v. Sher, 203 Minn. 589, 282 N.W. 823, we observe consideration by the Supreme Court of Minnesota of three cases involving loans under the Morris Plan with the use of installment certificates, wherein it was held that the taking of the installment payments on the certificate while the loan was maturing did not render the loan usurious. The court there stressed the fact that at maturity the borrower could elect to pay the note and keep the certificate as an investment, and the theory was followed that the purchase and sale of the certificate was properly treated as separate from the lending of money to the borrower.

In Simpson v. Smith Savings Society, 178 Ark. 921, 12 S.W. 2d 890, the Supreme Court of Arkansas considered a case in which the borrower suffered an advance deduction of 10 per cent for one year's interest and agreed to purchase an installment investment certificate for an amount equal to the loan, paying therefor in ten equal monthly installments, the certificate accruing interest at 4 per cent on the payments made on it and present the right of the borrower at his option to pay his note and retain ownership of the investment certificate, but in the beginning assigning it as collateral security to his note. The court there reached the same conclusion and affirmed the trial court treating the purchase of the certificate as severable from the borrowing of the money, and emphasizing the rules that the burden of proving usury rests upon the party alleging it, and that usury will not be inferred where from the circumstances shown the opposite conclusion can be reasonably and fairly reached.

In Mondie v. General Motors Accept-

ance Corp., 178 Okla. 584, 63 P. 2d 708, we pronounced the rule as follows:

"To prove usury in a transaction the evidence must be clear and cogent. Usury is never presumed. A party in pleading usury assumes the burden of proving that there was a loan of money and that the contract for a loan was for a greater than the legal rate of interest. Where the issue of usury is submitted to the jury on the evidence and the jury returns a verdict against a party, the party is bound thereby."

In this case, upon jury waiver, the trial court was satisfied and found that the evidence disclosed a legitimate business transaction between the parties, and that the defendant had failed to show that usury was charged, and found that the plaintiff did not make use of its business plan or the sale of its investment certificate as a cloak or subterfuge for the exacting of usurious interest, and we are convinced that the record supports that finding and conclusion.

Our attention is directed to the conclusion of this court in Security Thrift Syndicate v. Tidwell, 190 Okla. 377, 123 P. 2d 955. There the particular plan of doing business was so arranged as to taint the considered transaction with usury, and we upheld the trial court in so finding. That case, however, is clearly distinguished upon the facts from this case and from our conclusion in the building and loan company cases. In that case, the Security Thrift Syndicate Case, we emphasized the fact that the lending company never sold its so-called "thrift bonds" to the public as investments; that they accumulated no interest upon installment payments made thereon; that the lender made no loans without the borrower purchasing a so-called thrift bond; that there was no option in the borrower to keep them as an investment, but that they must be used and given up in liquidating the loan. We there pointed out the clear distinction between that situation and a situation like the one in this case and in the building and loan company cases. In the Security Thrift Syndicate Case the trial court from all the evidence found that the business plan was nothing more than a cloak and subterfuge for the collection of usurious interest, which conclusion we found to be justified, but chiefly by reason of the facts which distinguished the situation there disclosed, and which bound the so-called "thrift bonds" to, and made the same a part of, the money-lending transaction, and prevented any possible separation of the two at any time.

We have again considered the distinguishing language used in that opinion and apply the same as distinguishing the circumstances of this case from that one.

The judgment appealed from is affirmed.

CORN, C. J., GIBSON, V. C. J., and DAVISON and ARNOLD, JJ., concur. RILEY, OSBORN, BAYLESS, and HURST, JJ., dissent.

---

RILEY, J. (dissenting). The majority opinion affirmed the judgment of the trial court holding that no interest in excess of 10% per annum was charged, reserved, or collected in the series of transactions set forth in the record. I am unable to agree thereto for the reason that I am convinced that the record conclusively shows that usurious interest was reserved, charged, and collected by defendant in error.

The three defendants admitted the execution of the note sued upon and then pleaded payment by them and receipt by plaintiff of usurious interest, in that: The original debt was in the sum of $9,000, evidenced by a note dated June 22, 1936, payable nine months after date, from which defendants received only $8,325, and that $675 was deducted therefrom and charged as interest in advance; that defendants were required to and did pay on said note $1,000 per month for five months, or up to December 10, 1936, when the balance thereon claimed by plaintiff, in the sum of $4,000, was merged into a new note in the amount of $14,000 due 12 months after date, but that plaintiff deducted and withheld on said note $1,400 as in-

terest in advance, leaving only $8,600 cash received by defendants; that plaintiff required defendants to pay and they did pay on said note monthly installments of $1,200 each from February 10, 1937, to July 8, 1937, inclusive, at which time defendants executed an additional note to plaintiff in the sum of $13,000 due nine months after date, and that plaintiff deducted and retained as interest in advance on said note the sum of $975 and the defendants actually received from plaintiff the net sum of $12,025; that on the $14,000 note of December 10, 1936, defendants paid $1,200 per month for ten months, and on the $13,000 note of July 8, 1937, they paid $1,400 per month for four months and the further sum of $1,544.10 the 5th month; that on December 10, 1937, the unpaid balance of the $14,000 note and the $13,000 note was merged into one note for $18,000, from which plaintiff deducted and retained $1,460 as interest in advance, and defendants actually received in cash the sum of $8,684.10; that defendants were required to and did pay on said $18,000 note monthly payments of $1,500 from January 12, 1937, to April 12, 1937, inclusive; that on May 14, 1938, defendants gave plaintiff another note for $18,000, which included the unpaid portion of the $18,000 note of December 10, 1937, and defendants received but $5,110 thereon, and that $990 was deducted by plaintiff as interest in advance; that from June 10 to November 12, 1938, defendants were required to and did pay in monthly installments on said note in the total sum of $6,000; that on December 24, 1938, defendants executed a third note for $18,000 to plaintiff as a renewal of the balance of the $18,000 note of May 14, 1938, and received thereon in cash $4,760 in addition to the sum of $1,240 which plaintiff deducted and retained as interest in advance; defendants were required to and did pay monthly payments of $750 on said note of December 24, 1938, from February 12 to December 12, 1939; and that on December 20, 1939, defendants executed to plaintiff a note for $10,870 as a renewal of the balance claimed on the last executed $18,000 note and that $870 of the $10,870 note represented advance payment of interest; that since said $10,870 note was executed, defendants had paid thereon monthly or daily payments in the total sum of $5,840.02, leaving the balance claimed to be due as principal in the sum of $5,389.18, the amount sued for.

Defendants then alleged that since the date of the original $9,000 note, June 22, 1936, defendants have paid plaintiff usurious interest in the sum of $7,790.90 on the money actually borrowed and received from plaintiff, and that defendants are entitled to recover double said sum, or $15,581.80, less the unpaid balance of $5,389.18 on the note sued upon, or a net sum of $10,192.62 for which defendants prayed judgment.

Plaintiff, by way of answer to the claim of defendants, admits the execution by defendants of the several notes set forth, but denies that said loan contracts were continuous and continuing and denies that any notes were merged into other notes, and denies any contract or agreement whereby plaintiff knowingly charged, received, or collected a usurious rate of interest in excess of 10% per annum, and denies that defendants ever did pay any interest on money borrowed in excess of 10% per annum; plaintiff admitted the execution of a $9,000 note on June 22, 1936, for nine months, and that it deducted $675 or 10% interest in advance, but denied that defendants were required to pay on said note $1,000 per month, and alleged that said note was paid in full on December 10, 1936, and that, although it was not required to do so, plaintiff allowed defendants a rebate of $150 interest for the reason that said note was paid before maturity. The statute of limitations was then pleaded as against any claim for usury on account of said note.

Similar admissions and allegations were made with reference to all the other notes mentioned in defendants' answer, except that no plea of limitations was made as to the $18,000 note

dated December 24, 1938, or as to the note sued upon. As to the note sued upon, plaintiff alleged that it represents a loan made to defendants, and on which plaintiff charged 8% interest, or a total of $869.60, for a period of one year.

Certain findings of fact were made by the court as follows:

"The defendant had at various times prior to the obtaining of this loan, had six other loans of various amounts from the plaintiff company, the transactions in regard to all of which were the same as in connection with this loan, with the exception that two loans were for nine months and interest at the rate of ten per cent (10%) per annum was charged on three loans, and upon all of which the same type of collateral was pledged.

"The court finds that all of these loans as set out heretofore were separate and distinct from each other, each loan being a new and separate transaction and not a renewal of any former loan."

Defendants contend that the finding that all these loans were separate and distinct from each other and that each loan was a new and separate transaction and not a renewal of any former loan, is not sustained by the evidence and is wholly in conflict with the evidence and the conduct of the parties.

The uncontradicted evidence is that, aside from the first note of June 22, 1936, and the $13,000 note dated July 8, 1937, each of the notes included a substantial unpaid balance of the debt represented by a prior note. At least $4,000 of the debt represented by the original note was carried into and made a part of the consideration for the $14,000 note. The first note for $18,000, dated December 3, 1937, included an unpaid balance of approximately $7,855 of the debt represented by the $14,000 note dated December 10, 1936, and the $13,000 note dated July 8, 1937. The $18,000 note, dated May 14, 1938, included an unpaid balance of about $11,900 of the debt represented by the $18,000 note, dated December 3, 1937. The $18,000 note, dated December 24, 1938, included an unpaid balance of about $12,000 of the debt represented by the $18,000 note, dated May 14, 1938.

Finally, the note sued upon, dated December 20, 1939, for $10,870, represented the unpaid balance of about $10,000 of the debt represented by the $18,000 note, dated December 24, 1938. About $870 thereof represented advance interest.

No one of the several loan contracts was carried through and finally closed. Each of the several notes, before it matured, was surrendered and a substantial part of the debt represented thereby was carried forward and included in a new note. This occurred successively throughout the whole series of notes, so a part of the debt represented by the original note was included in each of the successive notes down to and including the note sued upon.

Under the record, it is clear that these several transactions are so closely connected as to show a continuing indebtedness carried forward from one transaction to the next succeeding one.

Therefore, the finding that all these loans were separate and distinct from each other cannot be sustained.

The record discloses that at the time each of the notes was executed, the borrower, Freed-Goodall Furniture Company, was required to purchase an "installment investment certificate" from the Morris Plan Company in a sum equal to the principal of the note given for the amount of the loan. For such certificate, the borrower was to pay in monthly installments, at such rate as would mature or pay out the certificate at the time the note would fall due. Each certificate, together with all payments made or to be made thereon, was, at the time, assigned to the Morris Plan Company "as security and collateral for a loan of the same amount as the principal amount of this certificate, this day made to the undersigned subscriber by the said Morris Plan Company of Oklahoma." These assignments were all executed by Freed-Goodall Furniture Company by its president and attested by its secretary. Payments were made to the Morris Plan Company until the next transaction, at which time the

amount so paid would be applied on the note and the new note would be given for the balance, together with any additional money loaned.

If the periodical payments thus made be treated as payments on the notes, the rate of interest paid was in excess of 10% per annum, with the possible exception of the $18,000 note, dated December 24, 1938.

The trial court found that all the contracts for the purchase of certificates of investment were separate and distinct transactions and contracts from the contracts for the loans, and that all monthly payments made by defendants were payments upon the certificates of investment and not payments upon the loans or notes which defendants owed the plaintiff. It is contended that this finding is contrary to the evidence and is not supported by any evidence.

In these findings the court apparently overlooked the uncontradicted evidence of plaintiff's witness to the effect that none of the loans would have been made without a contemporaneous agreement to purchase an investment certificate in an amount equal to the loan. It clearly appears that whatever obligations were assumed, the purchase of these certificates was imposed upon the borrower as a condition for the procurement of the loans as well as the purchase of the certificates. In other words, the Morris Plan Company would only agree to make a loan upon the condition that the borrower would buy from it an investment certificate for an amount equal to the loan and agree to pay for the certificate in monthly installments so as to mature it at the time the loan became due. The certificates were required to be and were assigned to the Morris Plan Company as collateral security for the loan. The monthly installments went into the hands of the lender and by the hypothecation became the property of the lender, and so remained until the debt was matured or until a new note was executed, and then, in the aggregate, were applied to the debt. On some of the notes interest at the rate of 10% per annum was taken out or withheld in

advance; on other notes interest was taken out or retained in advance at the rate of 8% per annum. By such a system it is readily seen that the borrower periodically reduced his debt, and consequently, as the payments increased, paid interest on money he did not possess. In effect, he paid and the lender charged more than the legal rate of interest on the original loan.

In such circumstances it is impossible to say with any degree of reasoning that the several contracts for the purchase of investment certificates were separate and distinct transactions and contracts from the contracts of the loan and that all the monthly payments made by the borrower were payments on the investment certificates and not upon the loan. They were so closely connected that the one could not be brought into existence without the other. Like Siamese twins, they were born together, inseparably connected during their life, and died together.

In Columbus Industrial Bank v. Rosenblatt et al., 111 Conn. 84, 149 Atl. 209, it is held:

"Where debtor borrowed $1,100 from bank, giving his note therefor, and at same time signed agreement to purchase investment certificate from bank in same sum, certificate to be paid for in fifty weekly installments of $22 each, purchase agreement *held* not bona fide and separate transaction as regards claim of usury but constituted a loan and was not within provisions of Pub. Acts 1919, c. 196, providing that installment payments on investment certificate should not be construed as part of contemporaneous loan."

And:

"Where debtor borrowed $1,100 from industrial bank and at same time purchased investment certificate from bank in like sum, the bank deducting $88 charge for making loan and the debtor was to make payment on the certificate at rate of $22 per week for fifty weeks, the transaction *held* to be violation of statute prohibiting bank from charging more than 12 per cent interest, and hence action on note would not lie under Gen. St. 1918, §§ 4798, 4802, since the

agreement to purchase investment certificate and the loan were but one transaction, not within provisions of Pub. Acts 1919, c. 196, providing that installment payments on certificate should not be construed as part payment of contemporaneous loan."

In City Loan Co. v. Cheney et al., 61 Minn. 83, 63 N. W. 250, where a similar question was before the court, it is said:

"It does not require much discernment or practical business experience to read between the lines the real nature of this scheme. The evidence amply justified the trial court in finding that the pretended sale of stock to defendant was a mere cover for usury, and that the money pretended to be received in payment of the stock was in fact exacted for the use of the money loaned. While it is true that usurious exactions made for extensions will not render the original loan usurious, yet evidence that borrowers were required to buy stock as a condition of obtaining such extension was competent for the purpose of characterizing similar exactions as a condition of obtaining the original loans."

See, also, Beneficial Loan & Investment Co. v. Ira, 75 Colo. 379, 226 P. 136, and Dowd et al. v. Labor Finance Corp., 100 Colo. 512, 69 P. 2d 305.

I am not unmindful of the holding in the Morris Plan Co. v. Lillie et al., 265 Mass. 98, 163 N. E. 749, and other cases cited by plaintiff which hold in effect that payments made on investment certificates or similar securities are not payments on notes.

It does not appear in any of the cases cited that the loans were made only upon condition that the borrower would purchase such certificates. The better rule is stated in Columbus Industrial Bank v. Rosenblatt, supra.

It is said that the theory back of the usury laws is that the borrower is at a great disadvantage in dealing with the lender; is in fact at the mercy of the lender. This is particularly true where the borrower had once become indebted to the lender and his interests require that he renew or extend his notes or obtain additional loans. As a general rule, it may be said that any transaction, whatever its form, whereby the creditor may secure any profit or advantage in excess of the rate of return permitted by law, is usurious. 66 C. J. 197.

Such advantage may be taken by requiring the borrower to buy property at an excessive price or to sell property at an inadequate price, or, as in this case, requiring the borrower, throughout a series of loan transactions, to purchase an investment certificate and agree to pay therefor in monthly installments, where the money so paid in is intended to and subsequently is repeatedly credited upon the note.

If these dealings between the parties are to be treated as one general continuing transaction, it is clear that the lender has secured an advantage or enabled itself to make a profit on the use of its money in excess of the maximum rate of interest allowed by law.

It follows that the finding of the court that plaintiff did not charge, receive, or reserve interest in excess of 10% per annum, that is, did not charge usury, upon the loan made by plaintiff to defendants on December 2, 1939, or any of the previous loans made by plaintiff to defendants, is clearly contrary to the uncontradicted evidence and admitted facts as to some of the previous notes.

Assuming the truth of plaintiff's evidence concerning the original note of $9,000, and the manner in which it was handled, defendants undoubtedly paid interest in excess of 10% per annum to the extent of at least $75, and apparently to the extent of $200.

On December 10, 1936, when that note was surrendered and the next note for $14,000 was executed, wherein plaintiff allowed defendants credit for the several installments paid on the note or debt represented thereby, the note or debt had actually earned interest, computed at the rate of 10% per annum, in the sum of about $325. This left unearned interest at that time of about $350. Plaintiff claims that a rebate of $150

was given defendants because the note was paid before it was due. Defendants testified that they were allowed a credit for unearned interest of only $140. Defendants should have been given credit for unearned interest to the extent of about $350. If defendants were in fact given credit for $150, there was still about $200 in unearned interest charged against • defendants which must have been carried over and included in the new note for $14,000. When the $14,000 note and the subsequent $13,000 note were surrendered and taken up, they were handled substantially in the same manner as was the $9,000 note. The evidence is that in each of the transactions down to the $18,000 note, dated December 24, 1938, a discount or rebate was given, but computed at a lesser rate of interest than that charged and taken out of the notes which were surrendered.

Therefore, there must have been interest which plaintiff was not entitled to collect, or "usurious interest," carried forward into and included in the successive new notes as and when they were executed. This excessive interest has never been accounted for and was necessarily included in the $18,000 note of December 24, 1938, and in the note sued upon. Defendants were certainly entitled to have this interest considered and the whole transaction considered as a continuing series of loans.

I am authorized to state that OSBORN, J., joins in this dissent.