Van Voorhis, J.
The restaurant liquor license of petitioner for premises located at 354 Lexington Avenue, New York City, in which it claims to have invested from $40,000 to $50,000, has been revoked by the State Liquor Authority upon the ground that it “ suffered or permitted the licensed premises to become disorderly in violation of Section 106, subd. 6 of the Alcoholic Beverage Control Law in that it permitted homosexuals to congregate on the licensed premises, resulting in the arrest of Joseph Kolb on or about February 2, 1950 and the arrest of John McGrath on or about March 2, 1950.” The inference is that petitioner pandered to the desires of such persons by making it an assignation point, and upon such a charge the revocation is really based. Of the two persons named in the *707 order of revocation, McGrath was tried upon a charge of offering to commit a lewd or indecent act, hut was acquitted in the Magistrate’s Court. Kolb pleaded guilty.
There is no contention that the licensee knew of the presence of the five other men who were proved to have been at the premises on single occasions between February 2 and August 6, 1950, and were charged by patrolmen with having made indecent advances to them. In each instance the officer, who evidently had led the patron to believe that he indulged the same proclivity, testified that the advances were made in secret, under circumstances which could not have come to the attention of the bartender or of any other of petitioner’s employees. No complaints were made by customers of the restaurant, although the record shows that it was regularly patronized by large numbers of men and women. In all of the cases mentioned, the arrests were made away from the premises, after the man charged with the offense had departed with the officer on the way to a private apartment. One of these five men, in addition to McGrath, was acquitted. The others pleaded guilty or were convicted and paid small fines. None of these five cases is claimed to have been brought to the attention of the licensee at the time, and not even the fact that an arrest bad been made of any person, including Kolb and McGrath, was reported to the licensee until a month after the Kolb incident had occurred.
It is significant that Samuel Lynch himself, the sole stockholder and manager of the licensee corporation, who testified that he was there 90% of the time, was also arrested “ on charges of allowing and permitting homosexuals to solicit others in Lynch’s Builders Cafe, and in warning homosexuals of the presence of the Police officers.” Not only was this charge against him dismissed in the Magistrate’s Court, but it was also dismissed by the State Liquor Authority, following the hearing at which it was presented as a specific ground for revoking petitioner’s license. Inasmuch as that is the only basis on which it would appear that the license could have been revoked under the circumstances of this case, the' determination under review is in reality inconsistent with this finding by the Authority involving the crux of the case. Although Lynch’s arrest was in August, 1950, six months following the Kolb incident and five months after the McGrath incident, it should be noted that no similar criminal charge was preferred against him or against anyone else in charge of the restaurant when *708 the Kolb or McGrath incidents occurred, and that if he had had any guilty knowledge or complicity in those occurrences he would have been likely to have been guilty all the more of permitting such people to solicit in his restaurant at a later date.
The complete revocation of petitioner’s license thus depends upon the acts of Joseph Kolb and the bartender at this restaurant during a period of from fifteen to twenty minutes after 3:00 a. m. on February 2d.
There is no substantial evidence, it seems to us, that petitioner permitted homosexuals to congregate on the licensed premises, or to solicit there, which the charge has been construed to mean. One man is not a congregation. We are not to “ guess or surmise what might or must have been ” (People v. Sacks, 276 N. Y. 321, 328, per Crane, Ch. J.). There is no evidence that Kolb had been encouraged to come there, or that petitioner knew beforehand that he was a homosexual or, if he were, that he would be likely to engage in overt acts or offers of lewd or indecent behavior. He had been at the restaurant before, but there is nothing to show that he had misbehaved on any previous occasion, or who or what he was except that he was a beautician, or what he was known by petitioner to be, or how he came there or anything else about him prior to three o ’clock in the morning of February 2d when the officer entered and found him standing at petitioner’s bar. On the officer’s testimony, there is no doubt that this man did disclose to the bartender upon this occasion that he was a homosexual, and that he intended to go home with the officer for illicit purposes, but the bartender’s quoted comment, “ You are doing all right tonight ” is too slender a thread to be evidence having probative force to establish that this man was known to have done the same thing there before, and had been or was being invited to return for the same purpose again. Any such conclusion would be mere guess or surmise. We do not intimate that all of these matters must be established before a license could be cancelled upon this ground; but where the only tangible evidence of this kind of misbehavior by a licensee centers upon one man, these factors assume greater importance. Twenty minutes later he left the premises and never returned. The licensee has not seen nor heard from him since he went out of the door on this occasion, although his arrest was not known for more than a month.
*709 The only disorderly conduct with notice of which petitioner is chargeable concerns the behavior of this man during these few minutes in the early morning of a single day after the plain-clothes man had entered the premises. Petitioner’s license really stands or falls upon whether the bartender’s conduct during this short interval amounted to inviting Kolb to return for another assignation, after learning that he had used the licensed premises to make an illicit appointment with the officer upon the same occasion. The undisputed evidence is that he left almost immediately and never did return. The continuance of petitioner in business ought not to depend on the bartender’s utterance of a pleasantry, instead of forcibly ejecting him or sending for a policeman when he was about to take his departure in any event. The bartender’s remark, on which the whole case depends, reflects an awareness that Kolb had solicited on the premises, but I am unable to perceive how it tends to prove beyond the merest conjecture that either he or the licensee had encouraged or permitted or become an accomplice in what occurred.
The only failure of duty which could be ascribed to the bartender was his omission to eject Kolb from the premises, or to summon a policeman to arrest him, on February 2d, and his brief attempt to' conciliate rather than to antagonize him. Doubtless the bartender was called upon to act decisively and with force if his course was clear. But a wrong decision by a bartender concerning what to do with a homosexual who has been drinking at three o’clock in the morning, if more than an error in business judgment, has no probative force to show that the licensee encouraged or permitted such persons to congregate there. It should be recollected that Kolb had not been convicted at this time, and that the bartender could well have doubted how far his word might go in court if he made the accusation. Even a lawyer might have been puzzled concerning what to do. The danger in a false move by the bartender is highlighted by considering the trouble that would have resulted, as hereafter indicated, if he had done what the Authority held to have been his duty when McG-rath was there.
It should be borne in mind that all persons are entitled to the full and equal accommodations, advantages, facilities and privileges of restaurants and other places of public accommodation, resort or amusement, and that serious penalties are provided under sections 40 and 41 of the Civil Bights Law for the wrongful exclusion of a person desiring to patronize a public place of *710 this character. Before preventing a patron from entering for this cause, petitioner would have had to he able to demonstrate not only that he was a homosexual, but also that he would be likely to engage in some lewd or indecent public display or offer at the premises. The hazards of excluding patrons on suspicion, without sufficient ability to prove the point, are illustrated in this case by the acquittal of McGrath in the Magistrate’s Court of the very offense on account of which respondents charge that he should have been arrested or at least ejected from this restaurant. If the licensee had done what the Authority charges it should have done with respect to McGrath, not only would it have been likely to be confronted with an ugly suit for libel, assault or malicious prosecution, but it might also have been subjected to civil penalties and its license placed in jeopardy by reason of violation of the Civil Bights Law. Although there is a distinction in the degree of proof required to establish the same charge in a criminal or civil proceeding, and acquittal on the criminal charge is not res judicata (People v. Briggs, 114 N. Y. 56), such acquittal has been held to be entitled to great weight before the quasi-judicial tribunal (Matter of Bender v. Board of Regents, 262 App. Div. 627, 631), and the practical consequences in a situation such as this would be so drastic as to tie the hands of the licensee in case of inability to convict on the criminal charge. The licensee could do nothing effectual without making or clearly implying a charge of crime, or attempted crime.
Homosexuals are often difficult to identify, their proclivities may remain dormant for long periods of time, and be disclosed only momentarily. It is entirely possible that the man upon whose conviction the revocation of this license depends, may have been inspired to do what he did after being affected by alcohol at three o’clock in the morning, to say nothing of his having been enticed by the officer who entrapped him. Persons of this character are accustomed to congregate in large numbers and, if it had been known among them that this restaurant catered to their patronage as a rendezvous, there would have been little difficulty in finding more than one whose conduct was sufficiently overt to have come to the attention of a bartender. With the exception of McGrath, who was acquitted, Kolb is the only offender whose behavior is claimed to have been in that category The other incidents, few in number, were not found and could not have been found against the licensee in the decision of the Authority. There is nothing to indicate that such conduct was countenanced by the licensee.
*711 Licensees in New York City are confronted by a social condition that is less acute in smaller communities, since quantities of such persons seek the, anonymity afforded by life in a metropolis. Some licensees probably yield to the temptation to exploit the desire of such people to seek out one another, and the Authority is undoubtedly trying in good faith to limit the spread of that kind of conduct. On the other hand, the law does not require licensees who do not cater to this trade to engage in a form of espionage, to keep their patrons under surveillance so as to be able to sustain charges of probable misbehavior if they are excluded or ejected from the premises.
We are admonished constantly by counsel for the Authority that our jurisdiction in these cases is limited, and that we have no poAver to review the punishment (Matter of Avon Bar & Grill v. O’Connell, 301 N. Y. 150). In the Avon case, there was testimony in support of revocation that the bartender referred a customer to a book-maker in the restaurant to place a wager upon a horse race, which is different from anything that happened here. There is no contention that the bartender sought out the officer for Kolb. There have been gambling and prostitution cases in Avhich determinations of the Authority have been annulled for the reason that the evidence failed to sustain findings that corporate officers or managing agents of licensees, particularly those in control of the premises, had knowledge of, or permitted gambling or solicitation thereon (For gambling, see Matter of Reuben, Inc. v. State Liquor Authority, 268 App. Div. 981, affd. 294 N. Y. 730, followed in Matter of Stevensville Lake Holding Corp. v. O’Connell, 269 App. Div. 804, and in Matter of President on Swan Lake, Inc. v. O’Connell, 269 App. Div. 805). Matter of Konopha v. Bruchman (290 N. Y. 777) resulted in annulling the determination of the Authority as unsupported by substantial evidence, under circumstances similar to the present case except that the charge Avas permitting prostitutes to congregate on the licensed premises. The same result was reached in Matter of Toyos v. Bruckman (266 App. Div. 28, appeal dismissed 291 N. Y. 745) Avhere, as in the Konopha case, prostitutes were found upon the premises but Avithout the proved encouragement or permission of the licensee. The court said (p. 30): “ Petitioner, in return for a substantial sum of money paid to the State, has been granted the privilege, revocable for cause it is true, to conduct a bar and restaurant. Until this privilege is revoked for cause, it is a property right and may be destroyed only in accordance *712 with law.” Homosexuals are harder to identify than prostitutes, since they carry on normally in other branches of life.
The nature of this charge and the popular feeling of revulsion which it engenders, should cause the court to be especially careful to weigh the record dispassionately, in order to ascertain whether it contains substantial evidence on which to base a determination by the Authority, however well intentioned, that destroys at one blow the estate, reputation and livelihood of the man who owns and operates this licensed corporation. We do not minimize the importance of preventing the extension of this kind of disorderly conduct, but the public interest is not less at stake in preserving our system of government under law, whereby businessmen can continue in legitimate occupations without being destroyed on suspicion and conjecture, however shrewd, but without substantial evidence that would be recognized as such in court in other situations.
Respondents’ determination revoking petitioner’s license should be annulled, and the license restored, with $20 costs of the appeal and printing disbursements.
Peck. P. J. and Glexxox, J. concur; Cohx, J. dissents and votes to confirm; Does, J., taking no part.
Determination annulled, petitioner’s license reinstated, with $20 costs of the appeal and printing disbursements to the petitioner. Settle order on notice.