## IN RE PROCEEDINGS TO ENFORCE PAYMENT OF TAXES DELINQUENT, WASHINGTON COUNTY.
### ROY F. JOHNSON AND OTHERS v. MARTHA AUGUSTA RICHARDSON.
### SAME v. HELEN M. TORINUS.[1]

May 1, 1936.

Nos. 30,803, 30,804, 30,805.

*Bundlie, Kelley & Finley* and *L. E. Torinus, Jr.,* for appellants.

*P. M. Lindbloom,* County Attorney, and *Reuben G. Thoreen,* Assistant County Attorney, for respondents.

*Bradford, Cummins & Cummins, amici curiae,* filed a brief in support of the contention of appellants.

*Harry H. Peterson,* Attorney General, and *William S. Ervin,* Deputy Attorney General, *amici curiae,* filed a brief on behalf of the State.

HILTON, JUSTICE.

These appeals have been taken to test the constitutionality of 1 Mason Minn. St. 1927, § 2150, as amended, which provides for the attachment of rents on tax-delinquent real estate.

[1]Reported in 266 N. W. 867.

May 14, 1934, at tax judgment sales, each of the three parcels of land involved in these proceedings was bid in by the state of Minnesota for the amount of the 1932 taxes, plus interest, penalties, and costs. September 10, 1935, the district court of Washington county, pursuant to 1 Mason Minn. St. 1927, § 2150, as amended, ordered the issuance of writs of attachment, and on September 12, 1935, the writs were issued directing the sheriff to "attach, collect and safely keep all the rents now due and  *  *  *  to become due" from the tenants of each of said parcels of land "until the sum *  *  *  paid for the state" at the "tax judgment sale  *  *  * and all subsequent taxes, penalties and interest thereon to date" should be collected and "that as such rent is collected  *  *  *  the same be forthwith delivered to the county treasurer." Thereafter the sheriff duly executed said writs and made and filed his return.

The respective owners of the three parcels of land involved applied for and procured, on September 18, 1935, from the district court, separate orders requiring the auditor, sheriff, and treasurer of Washington county to show cause why their motions for a dissolution of the attachments and levies made thereunder and for orders directing the return of monies and property received by the sheriff under said attachments should not be granted. By orders dated September 28, 1935, each of said motions was denied, and the orders to show cause, previously issued, were discharged. These appeals are from those orders.

1 Mason Minn. St. 1927, § 2150, as amended by L. 1929, c. 266, and L. 1935, c. 246, 3 Mason Minn. St. 1936 Supp. § 2150, provides:

"When any parcel of land is bid in for the state, until its rights be assigned or the land be redeemed, the sale shall not operate as a payment of the amount for which the same is sold, but at any time after such sale the county auditor may make and file with the clerk where the judgment is entered an affidavit stating the date of the sale, the amount for which such parcel was bid in for the state, and the amount of all subsequent delinquent taxes, that its right has not been assigned, that there has been no redemption, and that the land is rented in whole or in part, and produces rent, and giving

the names of the persons paying rent. Upon presentation of such affidavit, the judge or court commissioner for the county shall indorse thereon an order directing an attachment to issue to attach the rents of such lands. The clerk shall thereupon issue a writ directing the sheriff to attach the rents accruing for such land from any person, and to collect therefrom the amount for which the same was bid in for the state and the amount of all subsequent delinquent taxes, stating such amount and the date of sale, with penalties and interest accruing thereon, and his fees, and one dollar for the costs of the affidavit and attachment. * * * The sheriff shall receive such rents as they become due, and may bring suit in his own name to collect the same, and shall pay into the county treasury the amount collected. * * *

"Provided further, that if at any time while the sheriff is collecting. such rent the lease upon said property shall expire, or, if the sheriff has once commenced to collect such rent and said property becomes vacant, the county auditor may lease said property upon five days' notice to the owner, subject to the approval of the district court."

It was under the authority of this statute that the attachments in these proceedings were issued. Appellants contend that the statute violates art. 9, § 1, of the Minnesota constitution, providing that "taxes shall be uniform upon the same class of subjects," and also the fourteenth amendment to the federal constitution.

It is pointed out that under § 2150 if taxes are delinquent upon two similarly situated buildings, of equal value, both used for the same purpose, but one occupied and used by the owner while the other is rented out, the income earned by the latter is subject to attachment, whereas no summary remedy is imposed to collect the taxes upon the former. However, that circumstance results merely from the fact that there is something tangible to attach in the one instance and not in the other. A law cannot be condemned because it does not do the impossible. Appellants argue that the statute results in discrimination because in the case of the building occupied by the owner he can remain in possession, utilize and earn in-

come from it for the full five years or more allowed by the state as a period of redemption after taxes have become delinquent, whereas in the case of the person who has rented out his property the period of redemption means nothing as the state collects the rent during that period. The privilege to remain in possession and use property during that redemption period is an act of grace on the part of the state. It is not an absolute right. Further, the privilege so granted is not destroyed by § 2150 for so long as the rents are attached as payment of the taxes there will be no necessity of the state forfeiting the property. An Arkansas statute (Arkansas Acts of 1913, No. 169, § 1) authorized the collection of back taxes on land owned by corporations which had escaped their just burden of taxation because of having been assessed at inadequate and insufficient valuation. The act did not extend to land owned by natural persons which likewise had been assessed at inadequate and insufficient valuation. In White River Lbr. Co. v. Arkansas ex rel. Applegate, 279 U. S. 692, 49 S. Ct. 457, 73 L. ed. 903, it was held that the statute did not deny to the corporations the equal protection of the laws as required by the fourteenth amendment. It is elementary that in the field of taxation there is a broader power of classification than in other exercise of legislation. Standard Lbr. Co. v. Pierce, 112 Or. 314, 228 P. 812.

The remedy here invoked produces somewhat the same result as would be obtained by the old process of distress much used at common law. See C. N. Nelson Lbr. Co. v. McKinnon, 61 Minn. 219, 63 N. W. 630. It could serve no purpose unless there was something tangible upon which to levy, such as personalty or rent as is true under § 2150. Similarly, under statutes providing for it, there may be garnishment of rent for delinquent taxes. Russell v. Lewis, 15 Mass. 127. Only those properties producing rent would be subject to it. The ultimate effect of garnishment would be the same as under § 2150. There would be no unreasonable classification.

Many other summary remedies may be resorted to in order to enforce the payment of a delinquent tax. In this state under 1 Mason Minn. St. 1927, §§ 2211 and 2212, deeds conveying title to

land may not be recorded unless the taxes on the land conveyed have been paid; under § 2203, no structure, timber, or minerals on which a lien for taxes has attached can be removed from the land affected until the taxes are paid; under § 2204, structures, timber, or minerals removed from such land may be seized and sold to satisfy the taxes on the land. Other remedies such as personal liability, tax executions, supplementary proceedings, sale of personal property, forfeiture of property, and even arrest have been used to compel the payment of delinquent taxes. 3 Cooley, Law of Taxation (4 ed.) § 1326, *et seq*. To effectively use any of those remedies there must be something tangible against which the process can run. Likewise under § 2150 there must be rent. The fact that a property does not produce rent cannot in itself invalidate a statute merely because other property which does produce rent may be compelled to pay validly levied taxes. In no case is the tax obligation discharged until payment. Under § 2150 those properties that are subject to it will have their obligation for taxes reduced in *pro tanto* relation to the rent attached, whereas those on which no attachment can be made are likely to be forfeited for taxes and penalties imposed by way of interests and costs.

Even assuming that § 2150 does set up a special classification, that is not a fatal objection to it. As long as the rate of assessment is the same on properties similarly situated and used for like purposes and the obligation to pay the tax remains, there can be no objection to the remedies devised to enforce the tax on the ground that such remedies violate the uniformity clause of our constitution. Primarily that clause is aimed at the equal assessment and levying of the tax.

In Reed v. Bjornson, 191 Minn. 254, 261, 253 N. W. 102, 106, it was stated that "our uniformity clause is no more restrictive than the fourteenth amendment." It would follow then that if § 2150 does not offend against the provisions of the fourteenth amendment neither does it violate the uniformity provision of our constitution. In Tappan v. Merchants' Nat. Bank, 86 U. S. 490, 505, 22 L. ed. 189, the court stated:

"Again, it is said the law in question destroys the uniformity of taxation, because it provides for the collection of the taxes assessed on account of this kind of property in an unusual way. The constitution does not require uniformity in the manner of collection. Uniformity in the assessment is all it demands. When assessed the tax may be collected in the manner the law shall provide; and this may be varied to suit the necessities of each case."

That language is particularly applicable here. In 1 Cooley, Law of Taxation (4 ed.) § 308, p. 643, it is said: "The constitutional rule as to uniformity does not apply to provisions relating to the collection and enforcement of the tax." To the same effect are Galusha v. Wendt, 114 Iowa, 597, 87 N. W. 512; Mississippi State Tax Comm. v. Flora Drug Co. 167 Miss. 1, 148 So. 373; State ex rel. Moose v. Kansas City & M. Ry. Co. 117 Ark. 606, 174 S. W. 248. In view of these authorities, it would appear that appellants' contention as to an unreasonable classification rendering § 2150 invalid fails. Proceedings for the enforcement of taxes and assessments are entirely in the discretion of the legislature. In re Commissioners of Elizabeth, 49 N. J. L. 488, 499, 10 A. 363; see Flock v. Smith, 65 N. J. L. 224, 47 A. 442. All we have here is a proceeding to enforce payment of a delinquent tax. Section 2150 does not provide for any additional taxation. It merely is a supplementary regulation for the collection of taxes validly imposed and admittedly due.

The fact that the legislature has been able to devise a method to compel the payment of taxes on property which is producing an income but, due to the exigencies of the situation and conditions beyond its control, cannot impose a similar remedy upon nonincome-producing property should not deprive the legislature of the right to provide a means to compel the payment of delinquent taxes where that can be done. It is payment only that discharges the obligation of the tax, and until payment the state may proceed by all proper means to compel the performance of this obligation. In Florida C. & P. R. Co. v. Reynolds, 183 U. S. 471, 480, 22 S. Ct. 176, 180, 46 L. ed. 283, it was stated:

"If taxes are to be regarded as mere debts, then the effort of the State to collect from one debtor is not prejudiced by its failure to make like effort to collect from another. And if regarded in the truer light as a contribution to the support of government, then it does not lie in the mouth of one called upon to make his contribution to complain that some other person has not been coerced into a like contribution."

McComb v. Bell, 2 Minn. 256 (295), cited by appellants, is not in point. The charter provision there involved was much different than the statute here. Also, at that time our "wide open tax amendment" of 1906 was not a part of our state constitution.

For the reasons already given, we also are of the opinion that § 2150 does not violate art. 1, § 2, of our state constitution prohibiting class legislation, nor is it a special law exempting property from taxation within the meaning of art. 4, § 33, of our state constitution as has been suggested. We can see nothing even approaching special legislation in the statute.

It is contended that the statute is unconstitutional as it does not prescribe any rule or regulation for the guidance of the county auditor in determining whether the law should or should not be applied to a particular property. This is claimed to violate art. 3, § 1, of the state constitution prohibiting the delegation of legislative powers. The Illinois tax receivership law (Laws of Illinois, 1933, p. 873) was quite similar to the one in question. It provided that "the county collector *may* make application to any court of competent jurisdiction" to be appointed receiver of rent. There was nothing mandatory in that law, but still it was never attacked on the ground that it was a delegation of legislative authority even though it was before the Illinois courts many times. Under such a law as the one here involved there are many reasons for the legislature not establishing a hard and fast rule. This court necessarily must presume that public officials will do their duty and apply this statute whenever the necessity therefor arises. See C. N. Nelson Lbr. Co. v. McKinnon, 61 Minn. 219, 63 N. W. 630; Northwest Auto Co. v. Hurlburt, 104 Or. 398, 207 P. 161. Certainly the legislature itself cannot collect delinquent taxes. It can only de-

vise a method for use of the taxing authorities. The legislature cannot anticipate every conceivable situation that may arise. It is likely that there may be income-producing property where it would be neither profitable nor wise for the county auditor to have the rents attached. There are many remedies under our statutes by which taxes may be collected. Obviously all of them cannot be mandatory. The tendency is to hold an act not to be a delegation of legislative power in violation of the constitution when the legislature has defined the general policy of the act as far as is reasonably possible and has left to the administrative bodies the adaptation of such policy to the peculiar varying conditions. 18 Minn. L. Rev. 740, 741.

The only remaining question is whether § 2150 can apply to property situated as is that of the appellants. It appears that the properties in question consist of three buildings in the business section of Stillwater. These contain offices of various sorts leased out on a month-to-month basis. There is a central heating plant for all three buildings. Elevator, light, heat, water, and janitor services are provided as needed. Appellants claim that the rent cannot possibly be attached under the authority of § 2150 for the reason that a part of the rent is for the services rendered and cannot be separated from the rent received for the use and occupancy of the properties. It is claimed that there is no provision in the statute whereby the county auditor is given the authority to take over the operation of such properties and expend money in care and repair thereof or for necessary operating costs.

A statute must be construed so as to be practicable if that is possible. The legislature cannot be said to have intended a law that would be impossible of enforcement. There is nothing to prevent the county auditor from entering into contracts with the various tenants whereby the latter, in consideration of a reduced rental, would covenant to make necessary repairs. He might even come to some agreement with the owner with respect to the furnishing of necessary services such as heat, light, and water, or rent the heating plant out to private enterprise. Certainly the heating plant is a part of the realty and as such may be let by the county

auditor as provided by § 2150, although the heat that comes therefrom, or the water that comes out of the pipes, or the electricity that comes through the wires, or gas that might be brought into the building or any one of other numerous services are not part of the realty. They are all separate and apart from the realty, and rent received because of the furnishing of them could be turned back, by the county auditor, to the sources that rendered them, after the total rent had been attached. In this manner continued operation of the property would be assured. Appellants' suggestion that the use of hallways, stairs, elevators, heating plant, and the like would constitute a trespass is untenable, for the county auditor is given authority by § 2150 to let the entire premises in case leases expire or the property becomes vacant. He acts somewhat in the nature of a receiver, but of course without such complete authority. Section 2150, although not as specific, was intended to produce somewhat the same results as were achieved under the Illinois tax receivership law, *supra*. See also McDonough v. Gage, 357 Ill. 466, 192 N. E. 417; People ex rel. First of Englewood B. & M. Corp. v. Jarecki, 357 Ill. 475, 192 N. E. 419; People v. Illinois Women's Athletic Club, 360 Ill. 577, 196 N. E. 881.

No doubt one of several arrangements can be made for the continued operation of properties situated as are those of the appellants after attachment has been made under the provisions of § 2150. It is not for this court to specify them. That is beyond our province, although it would be our duty to pass upon questions that may arise in this connection should they be brought before us in the usual manner.

The orders appealed from are affirmed.