IN RE CERTIFICATION OF A BARGAINING AGENT.
WAREHOUSE EMPLOYEES UNION, LOCAL NO. 359, A. F. L.,
AND OTHERS v. FORMAN FORD & COMPANY.[1]

May 11, 1945.

No. 33,985.

[1] Reported in 18 N. W. (2d) 767.

Stanley V. Shanedling, for appellant.

William D. Gunn, for respondent Union.

J. A. A. Burnquist, Attorney General, for respondent Labor Conciliator.

MAGNEY, JUSTICE.

Some time prior to April 19, 1944, certain employes of appellant, Forman Ford & Company, of Minneapolis, a manufacturer of paints, organized a labor union known as Warehouse Employees Union, Local No. 359, A. F. L., one of the respondents herein. On that date, the union served a request on the state labor conciliator for investigation and certification of representatives for collective bargaining under § 16 of the Minnesota labor relations act. The petition stated that the question of representation arose because of the refusal of the company to bargain collectively. Pursuant to the request, the conciliator called a meeting for April 25 to consider the matter. Prior to this meeting, 23 of the employes signed representation cards authorizing the union to represent them in the matter. These were offered in evidence. After consideration of the testimony taken at the hearing, the conciliator ordered an election to be held on May 16, 1944. The question submitted to the employes was: "Do you want Warehouse Employees Union, Local No. 359, A. F. L., to represent you for collective bargaining purposes?" The election resulted in a tie—20 "Yes" votes and 20 "No" votes. The result of the election was certified to by the agent of the Division of Conciliation in charge of the election. Of the 43 employes who were eligible to vote, 40 voted. On May 19, the

conciliator received a petition from the union setting out that between April 17 and May 16 the employer, through its president, L. A. Potter, made certain statements to its employes which were of such a nature as to require that the election be set aside and asking that this be done and that the union be certified as the bargaining agent for the involved employes. The conciliator called a hearing for June 1 on this petition.

The employer appeared specially and asked that the petition of May 19 be dismissed on the ground that the conciliator had no jurisdiction to hear the same. It claimed that there was nothing in the act that gave the conciliator any jurisdiction to hear the petition. The union thereupon moved that the conciliator certify it as the bargaining agent of the employes of the company as set out in the petition for certification. Testimony was again taken. On June 27, after consideration of the whole record, the conciliator denied employer's motion for dismissal, and certified the union as the representative for collective bargaining purposes of all employes of the company, excluding office and supervisory employes. The employer filed objections to the certification, setting out its claims in detail. At the hearing on this petition, the union moved dismissal of the objections filed. The conciliator ruled that the objections of the employer were not well taken and granted the union's motion to dismiss. Employer thereupon petitioned the district court for a writ of *certiorari*. The writ was issued. On August 10, an order quashing the writ was filed. The appeal is from this order.

Section 10 of the Minnesota labor relations act (L. 1939, c. 440, as amended, Minn. St. 1941, §§ 179.01 to 179.17 [Mason St. 1940 and 1941 Supps. §§ 4254-21 to 4254-40]), provides:

"179.10 [§ 4254-30(a)]. Employees shall have the right of self-organization and the right to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection;

and such employees shall have the right to refrain from any and all such activities."

Section 16 (a, b) of the act provides:

"179.16, subds. 1, 2 [§ 4254-36 (a, b)]. Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining * * *.

"Whenever a question concerning the representative of employees is raised by an employee, group of employees, labor organization, or employer the labor conciliator or any person designated by him shall, at the request of any of the parties, investigate such controversy and certify to the parties, in writing, the name or names of the representatives that have been designated or selected. The labor conciliator shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the purpose of this act, the unit appropriate for the purpose of collective bargaining shall be the employer unit, craft unit, plant unit; provided, however, that any larger unit may be decided upon with the consent of all employers involved, and provided further, however, that when a craft exists, composed of one or more employees then such craft shall constitute a unit appropriate for the purpose of collective bargaining for such employee or employees belonging to said craft and a majority of such employees of said craft may designate a representative for such unit. Two or more units may by voluntary consent, bargain through the same agent or agents * * *. Supervisory employees shall not be considered in the selection of a bargaining agent. In any such investigation, the labor conciliator *may provide for an appropriate hearing, and may take a secret ballot of employees or utilize any other suitable method to ascertain such representatives,* but the labor conciliator shall not certify any labor organization which is dominated, controlled or maintained by an employer." (Italics supplied.)

The act directs the conciliator to adopt reasonable and proper rules and regulations relative to and regulating the conduct of hearings. Pursuant thereto, the conciliator did adopt certain rules and regulations. Section 6 of such rules provides:

"The Labor Conciliator, upon the completion of the hearing, shall forthwith determine who are the representatives of the employees for collective bargaining, or the method to be used to ascertain who shall be such representatives."

Section 7 of the rules provides:

"If the Labor Conciliator shall determine to take a secret ballot of the employees, he may direct that such election shall be conducted by a designated agent in such manner as he may prescribe. Upon conclusion of such election, the agent conducting the same shall prepare a report containing a tally of the ballots and the result of such election."

Section 8 provides:

"The Labor Conciliator shall, upon the completion of the proceedings hereinbefore described, forthwith certify to the parties in writing the name or names of the representatives that had been designated or selected and serve the same upon the parties to these proceedings."

It is evident from the statutes that the conciliator has been given wide discretion in the matter of the selection of a representative. In the instant case, he provided for an appropriate hearing on the union's petition for designation of a representative, which, under the statute, he was not compelled to do but which in his discretion he might do. He took a secret ballot of the employes, which, also, he was not obliged to do under the act but which in his discretion he might do. The reason for calling an election was to insure a free choice of a bargaining agent without intimidation by either side. As stated, the conciliator was not obliged to hold a hearing or order an election. He could have certified without either. At the hearing of April 25, the union took the position that its evidence

was sufficient to establish right of representation without an election. The whole purpose of the hearing and the election was to aid the conciliator in the selection of a representative for the employes. The balloting resulted in a tie vote. It was, therefore, of no aid to the conciliator in the ascertainment of a bargaining agent. Section 16(b) of the act ·further provides that, in addition, the conciliator may "utilize any other suitable method to ascertain such representatives." The legislature clearly intended to and did give the conciliator wide latitude in the selection of a bargaining agent.

Immediately upon the disclosure of the result of the fruitless election, the union, as has been stated, filed a petition requesting that it be designated the bargaining agent and setting out the alleged activities of Mr. Potter, the president of the employer, which activities, in its opinion, interfered with the employes' free choice and were responsible for the result of the election. The conciliator, after a hearing, acted upon this petition and designated the union the bargaining agent. Employer contends that the conciliator had no authority or jurisdiction to hear this petition of May 19 and to act thereon. In effect, it claims that the election which resulted in a tie vote terminated the proceedings, and that the conciliator had exhausted his authority to designate a bargaining agent. The question for us to determine is whether conciliator had authority to hear the petition of May 19 and act thereon. Did he follow a proper theory of law in proceeding to act on the petition?

First, we must consider the testimony relative to the employer's activities between the filing of the original petition and the holding of the election. According to the testimony of the employes, Lee Potter, the president of the company, stated to them that if the union won the election he absolutely would not have it; that he would close the place down and move to some other city; that they had always been one happy family around there, and if the union came in the employes could see him only through the union; that the union used strong-arm methods and was a bunch of racketeers; and that the only reason they wanted the employes to

pay the two dollars per month was so that they could sit back and live off that income. He pointed out that there would be certain advantages if the employes did not join the union. If the union won the election, he said he would have a right to cut their overtime, which would mean much less money to them; that there were times when he did not need overtime but permitted them to keep on working so that they could make this extra money. He called their attention to the benefits of a company union and suggested that one be organized. The above summarizes the testimony of the employes. Mr. Potter admits making several of the claimed statements. The findings of the referee in the main are supported by the testimony, although we fail to find in the record evidence that supports the finding that Mr. Potter stated that preferential treatment would be afforded employes who did not join the union.

If the proceeding had been brought under the federal act (National Labor Relations Act of 1935, 49 Stat. 449, 29 USCA, § 151, *et seq.*), the statements made by the president of the employer would have been an unfair labor practice. This is admitted by employer. Section 8 of the federal act provides that it shall be unfair labor practice for an employer—

"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7.

\* \* \* \* \*

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization; \* \* \*."

Section 7 of the federal act provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

The Minnesota act contains no such provisions defining an unfair labor practice as are found in § 8 of the federal act, but it does

have a provision similar to § 7 thereof. This is § 10 of the Minnesota act, which we have already quoted.

Employer concedes that the conciliator had the right to determine who should be the bargaining agent without calling for a secret ballot. It admits that he has discretionary powers, and that he could have determined that the union was the bargaining agent by the showing made by the consent cards filed or by the use of other reasonable methods. It contends, however, that once he determines to take a secret ballot he has no further discretion, and that in this particular case, because of the result of the election, it was mandatory on him to certify that the union was not the bargaining agent.

After the secret ballot had been taken and before the conciliator had certified in writing the names of the representatives that had been designated or selected, the petition of the union calling attention to the activities of the employer before the election, which were prejudicial to a free and fair choice, and asking that it be designated as the bargaining agent, was filed. The conciliator was conducting a representative proceeding, and it was then still pending. It had not ceased to be a representative proceeding. It retained its original character.

The conciliator found that the conduct of employer's president was a hindrance to the employes' right of self-organization guaranteed by the statute; that his statements were made for the purpose of dissuading employes from their free and independent exercise of the right of ballot on the question of representation for the purpose of collective bargaining; and that this contributed to the tie vote which resulted. These findings are supported by the evidence. Under the Minnesota act, the activities of the employer, acting through its president, did not constitute an unfair labor practice. This the union admits. But the conduct of the employer interfered with and was prejudicial to the right of self-organization guaranteed by § 10 of the Minnesota act. There was a violation by the employer of a specific provision of the statute, and the conciliator could very well take that into consideration in proceeding to ignore

an election which was not free from coercion and which was inconclusive because of the tie vote.

In New York Handkerchief Mfg. Co. v. N. L. R. B. (7 Cir.) 114 F. (2d) 144, it was held that the national board had authority to certify a labor union as employes' collective bargaining representative on the basis of the result of the employes' election, though participated in by less than a majority of the employes. The total number of employes eligible to vote was about 225, of whom 56 voted; 53 were favorable to the union, and three opposed. The court said (114 F. [2d] 149):

"It does not follow, however, that the Board could justify itself in the exercise of such authority in every case regardless of the number who participated in the election. Like any other authority, it must not be employed arbitrarily. In the instant case, as found by the Board, petitioner, by its unlawful conduct, interfered with the right of its employees to participate in the election and, no doubt, was responsible for the small proportion of its employees voting. Under such circumstances, we are of the opinion that the Board not only was within its authority, but was justified in concluding that the Union was the proper representative. To hold otherwise would place a premium upon the unlawful conduct of an employer and enable it to frustrate one of the major purposes of the Act—that is, the determination of a proper bargaining agent."

See, also, N. L. R. B. v. National Mineral Co. (7 Cir.) 134 F. (2d) 424; N. L. R. B. v. Central D. & E. Hospital, 79 U. S. App. D. C. 274, 145 F. (2d) 852.

Here, the trial court held that the conciliator had authority and jurisdiction to receive and act upon the petition of May 19, 1944, filed with him by the union. It also held that the conciliator proceeded upon the proper theory of the law and that his action and decision in the premises were not arbitrary, oppressive, or unreasonable, but in fact reasonable and substantially supported by the evidence in the record and return.

Section 8 of the rules provides that the conciliator, "upon the completion of the proceedings hereinbefore described," shall certify to the parties the name or names of the representatives designated by the conciliator. Employer contends that the certification of the result of the election is the certification referred to in § 8 of the rules. The rule, however, provides that such act shall be performed "upon the completion of the proceedings." In the instant case, the election resulted in a tie. It was tainted by the unlawful acts of the employer, many of which were admitted. It did not represent a free expression of the wishes of the employes. Employer interfered with the right of self-organization and collective bargaining. Under such circumstances, it does not seem reasonable to us to say and hold that the representative proceedings were at an end when the results of the election were announced and that the conciliator could proceed no further. Nothing in the rules refers to or limits his right to proceed in this matter. The situation presented here was not specifically covered by the rules. The use of the secret ballot in aid of the selection and designation of a bargaining agent had failed, and employer had contributed to its failure. Conciliator adopted another "suitable method" to ascertain such representative. Representation cards had been signed by the majority of the employes eligible to vote. Thus, before the election, at the outset of these proceedings, the majority of the employes had selected the union as its representative. The use of such cards as the basis for ascertaining the representative for collective bargaining, under the facts of this case, would certainly be the adoption of a "suitable method" to that end. In our opinion, the conciliator had authority and jurisdiction to receive and act upon the petition of May 19, 1944, filed with him by the union.

Order affirmed.