STATE EX REL. HAROLD DISON AND ANOTHER, d.b.a. DISON'S DRIVE IN CLEANERS & LAUNDERERS, v. HARRY L. HANSON.

78 N. W. (2d) 679.

August 3, 1956—No. 36,799.

*Felhaber, Larson & Fenlon,* for appellants.

*Miles Lord,* Attorney General, and *Robert Latz,* Special Assistant Attorney General, for respondent.

Nelson, Justice.

Appeal by relators from an order entered in the District Court of Olmsted County affirming order of the State Labor Conciliator certifying union as bargaining representative of relators' employees.

On February 1, 1955, Local 874, Teamsters & Inside Employees Union, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers and the American Federation of Labor, filed a request with the conciliator for investigation and certification of representatives for collective bargaining. A hearing was held on said request, pursuant to due notice, February 9, 1955, at Rochester, Minnesota, before the State Labor Conciliator, hereinafter referred to as the conciliator. At that hearing, Local 874, hereinafter referred to as the union, was represented by its business agent, Max Durand, a layman, and relators, a Minnesota partnership, were represented by Harold Dison, one of the partners, and their legal counsel.

At the opening of the hearing, conciliator made the following statement for the benefit of those present and in attendance:

"A request for investigation and certification of representatives for collective bargaining purposes pursuant to Section 16 of the Minnesota Labor Relations Act was received by the State Labor Conciliator on February 1, 1955, from the Teamsters and Inside Workers Union, Local 874, AFL, 405½ South Broadway, Rochester. The union seeks to be certified as the collective bargaining representative of certain employees of Dison's Drive In Cleaners & Launderers, 214 North Broadway, Rochester, in the unit as suggested 'of all employees of the employer excluding clerical and supervisory personnel.' Union is represented by Max Durand, 405½ South Broadway. Purpose of the hearing is to allow all interested parties to present such evidence and testimony as they deem pertinent to the question under consideration. *The union has presented the conciliator with a majority of authorization cards signed by the employees of Dison's Cleaners and Launderers as evidence of their interest in representing the employees.*" (Italics supplied).

Thereafter the business agent for the union made the following statement:

"It is our position, Mr. Conciliator, that we have presented a majority of the people's signed authorization cards, and Mr. Conciliator, we take the following position: (1) we take the position that we believe we should be certified under the evidence presented; and (2) in the eligible list we find the name Loren Dison and believe there is a definite relation to the company and should not be on the list and should be excluded; Myrtle Schopper and Ruth Schmidt were laid off. Otherwise, we have no objection to the list that has been presented. The company has been committing some unfair labor practices; I do not believe that the people can make an impartial decision after being influenced by the company."

This was followed by the following colloquy between the conciliator, the business agent for the union, and the attorney for relators:

"Conciliator Hanson: To what do you refer?

"Mr. Durand: (1) Company granted a ten-cent an hour increase; (2) Some of the sons of the employer have told the people that if the union comes in, they would close certain parts of the shop and people would be laid off; discouraging them to becoming organized. If necessary, we could get affidavits to the effect of threats of lay-off.

"Conciliator Hanson: Did such increase take place in the last pay period?

"Mr. Durand: Shortly after the first of the month.

"Conciliator Hanson: Is that all you have at this time?

"Mr. Durand: Yes.

"Mr. Fenlon: It is the company's position that an election should take place to fairly determine if the people want to be represented; it is relatively simple getting authorization cards. I think we can have Mr. Dison explain many of the questions raised. * * *"

Matters which the union complained of were fully explained pursuant to questioning of relator Harold Dison by his counsel. The conciliator and the business agent for the union joined in this questioning. Counsel for relators asked the business agent whether he

maintained that the employees were told certain things by the employer including the promise of increase of wages to influence their selection, to which his answer was no. Relators' counsel then made the following statement:

"If there is any testimony as to what the people were told with respect to an increase or an alleged threat to close the plant because of union activity, we would suggest that evidence be submitted."

No such evidence was offered and no further consideration was given to that matter.

The conciliator then concluded the hearing by asking certain questions from relators' counsel and the business agent, which were answered and appear in the record as follows:

"Conciliator Hanson: Does anyone have anything further to add that he would like to have on the record?

"Mr. Fenlon [relators' counsel]: Nothing further unless the conciliator thinks there is something necessary, *or the union wishes to continue it.*

"Conciliator Hanson: It appears to the conciliator that an investigation should be made by this office.

"Mr. Fenlon: I take it that the union refuses to enter into a consent election.

"Mr. Durand: Yes.

"Conciliator Hanson: If you have nothing further for the record, the meeting will stand adjourned. (HEARING ADJOURNED)" (Italics supplied.)

Neither relators' attorney nor the union representative, although advised by the conciliator that he had been presented with a majority of the authorization cards signed by the employees, asked for an examination of the authorization cards at the hearing, neither did they suggest or request that the authorization cards be put into evidence. At the same time the conciliator made it plain that his office might utilize an additional or other suitable method to ascertain the bargaining representative and he made it known that such an investigation should be made by his office.

The Division of Conciliation record of the hearing of February 9, 1955, indicates that immediately after the hearing had been adjourned the conciliator made the following observation:

"I do not feel that the employer in this case committed any deliberate acts of interference; however, the granting of a wage increase at this time was most unfortunate. In order that the employees are assured a fair break in this matter, I think it best that we interview each employee as follows:

"1. Did he sign an authorization card?
"2. Did he know what he signed and what it meant?
"3. If he did so, did he still want the union to represent him?
"4. If he had changed his mind, what caused it?
"5. Perhaps he never wanted union representation?"

Only a few days after the hearing of February 9, 1955, the conciliator notified relators regarding such further investigation by the following letter:

"Dison's Drive In Cleaners & Launderers
214 North Broadway
Rochester, Minnesota
"Dear Sir:

"A representative of this department will be in Rochester on Thursday, February 17, 1955, to make a further investigation on the matter of the determination of a bargaining agent for certain of your employees.

"Will you please see that your employees are available so that they may be interviewed by our representative who will be at the Armory across the street from your place of business on that date. This interview will begin at 10:00 a. m. and will continue until all employees have been interviewed.

"Your cooperation in this matter will be appreciated.

"Yours very truly,
"HARRY L. HANSON
Labor Conciliator

"Dated at St. Paul, February 15, 1955.
"cc: General Drivers No. 874
"HH:pb                    By Halon Haugen, Deputy"

On February 17, 1955, James L. Kelley, Assistant State Labor Conciliator, interviewed the 18 employees which the record indicates it was agreed were those who might express themselves as being for or against representation by the union. They were interviewed on schedule according to the conciliator's letter of February 15, and the memorandum thereafter filed by the assistant conciliator disclosed that out of the 18 employees interviewed seven were either unfavorable to the union or neutral and 11 were emphatic in their desire to have the union represent them. Thereupon the conciliator made his order dated February 24, 1955, certifying Local 874 as the collective bargaining representative of the employees of relators, the employee unit including all employees of the employer, excluding managerial, clerical, and supervisory.

Relators entered their formal objections bearing date March 2, 1955, to this certification by the conciliator, stating their position as follows:

"* * * It is our position that no reasonable means for determination was used by your office and that the only possible proper manner of selecting bargaining representatives under the circumstances was by secret ballot so that a true expression of opinion could properly have been had.

"We request that the certification be withdrawn and that an election be ordered by your office at the earliest opportunity."

It is clear that relators' formal objections were critical of conciliator's certification in the main, in that an election by secret ballot if it had been resorted to would have furnished a truer expression of opinion on the part of the employees on whether they desired union representation. In other words, it constituted a request that the certification be withdrawn and that an election be ordered, to determine the bargaining agent, in place of the method pursued by the conciliator.

On March 4, 1955, the conciliator entered his order dismissing the objections on the grounds that they did not raise a substantial or material issue with respect to the correctness of the certification.

Relators next applied for and obtained a writ of certiorari issuing out of the District Court for Olmsted County to review the administrative order of the conciliator certifying Local 874 as employees' bargaining representative. The order was affirmed below and relators now seek a reversal and ask that the certification order be set aside.

Only two basic issues are involved on this appeal. (1) Was the procedure followed by the conciliator within the discretion afforded him under M. S. A. 179.16, subd. 2? (2) Did the procedure followed by the conciliator which lead to the certification of the bargaining agent in the instant case fulfill the requirements of due process of law? The original employees' organization cards relied upon as authority for the selection of a bargaining representative have not been made a part of the printed record or attached thereto. However, a certificate attesting to the fact that these cards are contained in the district court file transmitted to the clerk of the Supreme Court has been supplied, and we have had the opportunity to consider all the items that make up the file.[1]

The record shows that all parties were fully advised that the original authorization cards were in the possession of the conciliator at the hearing; that the relators failed to specifically object to reliance being placed thereon by the conciliator except to urge an election as the better method rather than the use of authorization cards, and failed to request that they be exhibited or formally placed in evidence, and in that manner made a part of the record. The record indicates that relators voluntarily concluded their part in the only hearing ordered and held herein, when the conciliator at the close thereof February 9, 1955, announced: "If you have nothing further for the record, the meeting will stand adjourned," and then followed this announcement by the observation, "In order that the employees are assured a fair break in this matter, I think it best

---

[1]See, Fidelity-Philadelphia Trust Co. v. Brown, 181 Minn. 392, 232 N. W. 740. Also, see Mine Workers v. Arkansas Oak Flooring Co. 351 U. S. 62, 76 S. Ct. 559, 100 L. ed. 941, wherein majority status was established by reliance on authorization cards.

that we interview each employee as follows:" outlining the manner in which this was to be done. No objection was voiced thereto by anyone present at the hearing, which included Harold Dison for relators, and their counsel.

While relators had the opportunity to do so, they did not introduce any evidence to dispute the fact that the majority of the employees desired to be represented by the union or contend to the contrary. What the relators, according to the record, contended for was a determination in selecting the bargaining representative by secret ballot, which they urged, but which the conciliator in his discretion decided would be unnecessary, he thereafter certifying upon the record made at the hearing and such additional investigation as he had announced at the hearing, both before and after adjournment his office would make.

The conciliator contends that his action in calling the hearing and conducting personal interviews with the employees as to the authenticity of the authorization cards previously submitted to him and certifying the union as bargaining representative for relators' employees, without calling another hearing in the instant case, no continuation thereof having been requested, was well within the discretion afforded him under § 179.16, subd. 2. We are especially concerned here with that part of the statute which reads as follows:

"When a question concerning the representative of employees is raised by an employee, group of employees, labor organization, or employer the labor conciliator or any person designated by him shall, at the request of any of the parties, investigate such controversy and certify to the parties in writing, the name or names of the representatives that have been designated or selected. * * * In any such investigation, the labor conciliator *may* provide for an appropriate hearing, and *may* take a secret ballot of employees or utilize any other suitable method to ascertain such representatives, but the labor conciliator shall not certify any labor organization which

is dominated, controlled, or maintained by an employer." (Italics supplied.) [2]

This court had a similar situation under consideration in Warehouse Employees Union v. Forman Ford & Co. 220 Minn. 34, 18 N. W. (2d) 767, except for the fact that the original employees' authorization cards were placed in evidence at the hearing. Mr. Justice Magney speaking for the court in that case said (220 Minn. 38, 18 N. W. [2d] 769):

"It is evident from the statutes that the conciliator has been given wide discretion in the matter of the selection of a representative. In the instant case, he provided for an appropriate hearing on the union's petition for designation of a representative, which, under the statute, he was not compelled to do but which in his discretion he might do. He took a secret ballot of the employes, which, also, he was not obliged to do under the act but which in his discretion he might do. The reason for calling an election was to insure a free choice of a bargaining agent without intimidation by either side. *As stated, the conciliator was not obliged to hold a hearing or order an election. He could have certified without either.* At the hearing of April 25, the union took the position that its evidence was sufficient to establish right of representation without an election. The whole purpose of the hearing and the election was to *aid* the conciliator in the selection of a representative for the employes. The balloting resulted in a tie vote. It was, therefore, of no aid to the conciliator in the ascertainment of a bargaining agent. Section 16(b) of the act further provides that, in addition, the conciliator may 'utilize any other suitable method to ascertain such representatives.' *The legislature clearly intended to and did give the conciliator wide latitude in the selection of a bargaining agent.*" (Italics supplied.)

Another case which deals with the discretion vested in the conciliator is State ex rel. American Federation, etc. v. Hanson, 229 Minn. 341, 38 N. W. (2d) 845.

[2]See, M. S. A. 179.16, subd. 1, providing for majority selection of bargaining representative, and § 179.05 on adoption of rules and regulations for hearings.

The first case to come before the Minnesota Supreme Court following the adoption of the Minnesota Labor Relations Act was State ex rel. Berland Shoe Stores, Inc. v. Haney, 208 Minn. 105, 292 N. W. 748. In that case a list of authorization cards was submitted to the conciliator. At a meeting between the parties on the conciliator's invitation he said that after studying the list of authorization cards submitted on the part of the employees and the company's list of employees which they were to submit, he would compare and certify the result. Another meeting was scheduled to be held a few days later for the purpose of giving these items consideration. There was no formal introduction of the authorization cards. Their genuineness was not questioned, the union having the majority. The conciliator promptly certified the local in that case as the bargaining agent. Most of the argument therein had to do with the construction of the statute from the standpoint of due process. It was there argued on the part of the company that, in order to pass the constitutional test, the law must be construed as requiring a hearing, with notice, as a condition precedent to the certification of a bargaining agent.

The impartiality of the conciliator is not questioned here by either the employer or the union. In due course he made his order certifying Local 874. In doing so he did not make findings of fact and conclusions of law. An examination of the Labor Relations Act, M. S. A. c. 179, indicates no duty upon the conciliator to proceed in that manner. It provides that he shall certify to the parties, in writing, the representative designated or selected. Its provisions indicate, however, that the legislature vested broad powers in the office of the conciliator in the conduct of investigations preliminary to the certification of a bargaining agent. Certainly the conciliator may on occasion adopt the investigation procedure of questioning each employee in the bargaining unit privately without violating due process. He may do so to determine the authenticity of such authorization as employees may make regarding their choice of a bargaining agent or their desire to be or not to be represented.

Whether due process has been violated at a hearing conducted by the conciliator under the state Labor Relations Act, or by the lack of a full hearing or an additional hearing must depend upon the position of the parties involved in the matter under consideration, the rights to be determined and the interpretation of § 179.16 as applied to the facts of each separate proceeding, as well as the rules of procedure adopted pursuant to § 179.05.

It is clear from the provisions of our Labor Relations Act that the employer cannot participate in or interfere with the employees' freedom of action in selecting a bargaining agent. This does not mean, however, that the employer cannot question the employees so long as there is no interference with the right of self-organization and the right to bargain collectively guaranteed to the employees in § 179.10, subd. 1. So much the relators admit but contend that the employer was entitled to a further hearing preceding the certification because of the interview of employees conducted by the conciliator's office February 17, 1955.

If at the hearing conducted, pursuant to due notice, it is announced, as the conciliator did in the conferences both before and after adjournment, what his office will undertake by way of further investigation and all parties are specifically called upon to present any additional evidence they might have, going to the issue, before adjournment, any complaint thereafter of not having been fully heard comes too late. Even if, when the hearing is viewed in retrospect, a different course might seem to relators the better one to have taken, they cannot now overcome their waiving the opportunity to proceed further, if there were additional matters they wished to present for the record, when invited to do so before the hearing was closed.

There having been a full and complete hearing by labor conciliator, pursuant to request and due notice given, in which relators, as the employer, participated without objection, and wherein conciliator gave notice of his intention that his office would check further on the authenticity of the original authorization cards then in his possession, offering the relators the opportunity of presenting

any additional evidence they might have and of participating further therein as they might choose, before adjournment, any further hearing therein became unimportant, upon the particular facts of the case, and the question of due process, likewise, unimportant, since it had been eliminated by waiver.

This court held in the Haney case that there was a waiver of notice under the rule of Peterson v. Board of Supervisors, 199 Minn. 455, 272 N. W. 391. The court also made it clear in the Haney case that where, without notice, the adversary parties have joined in the hearing without objection, the requirement of notice has simply become inoperative, and then commented that its subject matter has disappeared and its sole purpose accomplished because the parties have made general submission to jurisdiction; that if a party actually appears in the proceedings, the notice becomes unimportant. It reached the conclusion therein that, because preceding the conciliator's certification of the local's right to employee representation there was a full hearing participated in by the company without objection, it was error for the court below to vacate the conciliator's certification. Mr. Justice Peterson concurred specially in the Haney case asserting that the right of each, employee and employer, to select its bargaining representative is in the very nature of things an exclusive right, commenting further that (208 Minn. 110, 292 N. W. 750) :

"* * * Employes are to have no voice in selecting the representative of the employer. The employer is not to interfere or dictate the selection of a representative by employes. * * * The right of selection of a representative belonging as it does to each disputant without interference or dictation by the other, *the selection by one is a matter of no concern to the other.* The employer cannot be heard to question the selection of a representative by the employes without participating in or interfering in the exercise of the employes' exclusive right of selection. Hence the employer cannot be heard on the matter. *He may exercise and vindicate his own* rights but not those of others." (Italics supplied.)

It is generally considered that where a public officer such as a labor conciliator is granted powers to determine and certify representatives for collective bargaining, he has a wide discretion in carrying out those powers. 43 Am. Jur., Public Officers, § 255. It is also well established that in exercising judgment and discretion such conciliator is not wholly confined to powers specifically conferred by statute. The duties of such public officer include all those which fairly lie within its scope, those which are essential to the accomplishment of the main purposes for which the office was created, and those which, although incidental and collateral, are germane to, or serve to promote or benefit the accomplishment of the principal purposes. However, these implications are not to be extended beyond the fair inferences to be gathered from the circumstances of each case. 43 Am. Jur., Public Officers, § 250. This court has recognized these rules above quoted and applied them in Harriet State Bank v. Samels, 164 Minn. 265, 204 N. W. 938.

We have no difficulty in reaching the conclusion that the legislature intended to give to the conciliator the power to determine which method under § 179.16, subd. 2, best serves the interest of employees, and that the conciliator, when he finds it necessary and desirable to exercise his discretion, may utilize one or more of the methods by which this court has said a collective bargaining representative may be determined.

Relators appear to rely heavily upon Amalgamated Food Handlers, Local 653-A, 244 Minn. 279, 70 N. W. (2d) 267, in support of their contention that the separate investigation by the conciliator after the hearing which had been completed and adjourned and in part relying thereon in certifying the bargaining agent, deprived them of their constitutional right of due process. In that case this court said (244 Minn. 285, 70 N. W. [2d] 271) :

"The *optional* features of the Minnesota act as to elections or *alternative* methods of investigation distinguish it from the National Labor Relations Act, as amended, where a secret ballot as the basis for determination of representation is mandatory. 61 Stat. 144, 29 USCA, § 159(c) (1)." (Italics supplied.)

And again in the same opinion it said (244 Minn. 286, 70 N. W. [2d] 271):

"It is clear from the foregoing that here the conciliator could have based his decision *either* upon a hearing, a secret ballot, *or* the utilization of any other suitable method such as reference to the authorization cards to ascertain the employees' choice." (Italics supplied.)

The court in the Amalgamated Food Handlers case clearly recognized the rules announced in the American Federation case and the Forman Ford & Co. case, and therefore made it clear that the Amalgamated Food Handlers case was distinguishable in that the controversy was one between two competing unions, where there were charges of unfair labor practices against the employer. In that case a second hearing had been ordered by the conciliator to consider objections filed to his certification, the grounds stated being interference in the election by the employer and one of the unions. Evidence was presented at this hearing. Investigations aside from the hearing were conducted through an assistant conciliator particularly as to whether the signatures on the application cards previously submitted by one of the unions were authentic and procured without duress and whether any of the parties had influenced the election unfairly. The conciliator thereafter based his conclusion partly upon the hearing and partly upon the investigation, concluding that the authorization cards obtained by the Amalgamated Food Handlers were genuine in the first instance, and as a consequence the certification of the other union as bargaining representative was withdrawn and the food handlers union selected and certified. Clearly here was a genuine controversy involving the right to representation between competing unions and the charge of interference and unfair labor practices against the employer, participated in by one of the unions, in the free selection of a bargaining representative. This court held that, since the labor conciliator had ordered a hearing to determine objections to the certification of one of the unions as the bargaining representative, due process required that his decision thereon be based upon the full record as made at the

hearing and not, under the particular facts of that case, upon investigations separate and apart from the hearing, although conducted by his office and pursuant to his authority and direction.

The facts in the Amalgamated Food Handlers case stamp it as clearly distinguishable from the case at bar, and in no manner controlling of its particular set of facts. No hearing was ordered in the instant case on relators' objections to the certification of the bargaining representative. There were no competing unions. No claims as to unfair labor practices materialized, and therefore none to consider. The objections to certification were accompanied by a request that the certification be withdrawn and an election be ordered. In essence relators' objection was that the certification should not have been made without holding an election. Whether to hold an election is discretionary with the conciliator under § 179.16, subd. 2. The conciliator dismissed the objections without a hearing and refused to vacate the certification on the grounds alleged since an election is not mandatory under the Minnesota Labor Relations Act.

A misapprehension by a litigant of the steps which its best interests require during a hearing or a trial may be appealing grounds for a plea to the discretion of the hearing tribunal for another chance, but it is not grounds for our interference as a denial of constitutional rights. Market St. Ry. Co. v. Railroad Comm. 324 U. S. 548, 65 S. Ct. 770, 89 L. ed. 1171. It was held in that case, Mr. Justice Jackson speaking for the court, that one who is not in a position to show that he was prejudiced by the acts complained of has not been deprived of due process of law.

The record justifies and supports the order of the court below.

Affirmed.