STATE EX REL. JOSEPH G. BROWN AND ANOTHER, COPARTNERS d.b.a. BROWNIE'S BAKE SHOP, v. CHARLES W. JOHNSON AND ANOTHER.

96 N. W. (2d) 9.

March 26, 1959—No. 37,625.

*Floyd V. Nichols,* for appellants.

*Miles Lord,* Attorney General, *Edward J. Parker,* Assistant Attorney General, and *Henry H. Feikema,* Special Assistant Attorney General, for respondent conciliator.

*Plunkett & Plunkett,* for respondent union.

MURPHY, JUSTICE.

This is an appeal from an order of the District Court of Freeborn County confirming the certification of a union as bargaining representative by the state labor conciliator and discharging a writ of certiorari. The issue with which we are concerned here relates to the validity of the order of the labor conciliator certifying the Hotel, Hospital and Tavern Employees Local 21, AFL-CIO, as the exclusive representative for collective bargaining purposes of the production and delivery employees of the appellant company. The order excludes office employees, owners, and retail sales clerks from the bargaining unit. The employer, Brownie's Bake Shop, is a retail and wholesale bakery establishment in Albert Lea, Minnesota.

The first contention of the employer is that the designation of production and delivery employees as a separate bargaining unit is improper. The brief asserts:

"* * * The employer feels that with his employees varying from 16 to 18 that all employees should be included in one bargaining unit."

It appears from the record that there are about 11 employees in the employer's bake department. These employees were one driver, four bakers, five helpers, and one dishwasher. In determining whether the labor conciliator abused his discretion in designating the production or bake department employees and the driver as a bargaining unit, it is necessary to examine M. S. A. 179.16, subd. 2, which provides in part:

"* * * when a craft exists, composed of one or more employees then such craft shall constitute a unit appropriate for the purpose of collective bargaining for such employee or employees belonging to such craft and a majority of such employees of such craft may designate a representative for such unit."

It appears from the record that seven of the employees in the production and delivery department signed authorization cards naming the union as their representative. No specific argument is advanced as to why the unit designated should not be recognized, nor is any authority cited by the employer to support its contention that the conciliator must recognize all of its employees as comprising one bargaining unit. It is clear from § 179.16, subd. 2, that the conciliator may designate a representative where a craft exists, even though such craft is composed of but one employee. 38 Minn. L. Rev. 748. On the record here it seems to us that there was sufficient basis for recognizing production and delivery employees as a separate craft. The nature of their work, the skills involved, and established differences in wage scales are such as to identify them as members of a craft apart from those employees who work in a clerical or sales capacity. Moreover, the employees in the production and delivery department are full-time employees, working from 40 to 48 hours per week, whereas those in the clerical and sales department are largely part-time employees, working from 27½ to 40 hours per week. We think it was clearly within the discretion of the labor conciliator to designate the production and delivery employees as a separate craft for the purpose of collective bargaining pursuant to § 179.16, subd. 2.[1]

[1] Cf. Rathbun, *The Taft-Hartley Act and Craft Unit Bargaining,* 59 Yale L. J. 1023, 1034 to 1037; 31 Am. Jur., Labor, § 272.

■ The employer next contends that the certification is invalid because no election to determine a representative was held. The employer asserts:

"The employer has no objection to the employees belonging to the Union and will bargain with the Union if after an election it is elected as the collective bargaining agent."

It should be noted that, in addition to allowing the labor conciliator to decide questions concerning the representation of employees, including that of the appropriate bargaining unit, § 179.16, subd. 2, provides that the conciliator:

"* * * may provide for an appropriate hearing, and may take a secret ballot of employees *or utilize any other suitable method to ascertain such representatives, * * *.*" (Italics supplied.)

This provision has been interpreted as granting broad discretionary powers to the labor conciliator in matters of majority designation.[2] In the present case the conciliator certified the union without an election. This practice has been held to be a reasonable exercise of the powers granted to the labor conciliator by the act. In State ex rel. Dison v. Hanson, 248 Minn. 87, 99, 78 N. W. (2d) 679, 687, we said:

"* * * the legislature intended to give to the conciliator the power to determine which method under § 179.16, subd. 2, best serves the interest of employees, and that the conciliator, when he finds it necessary and desirable to exercise his discretion, may utilize one or more of the methods by which this court has said a collective bargaining representative may be determined."

Also, in Warehouse Employees Union v. Forman Ford & Co. 220 Minn. 34, 38, 18 N. W. (2d) 767, 769, we said:

"It is evident from the statutes that the conciliator has been given wide discretion in the matter of the selection of a representative. In the instant case, he provided for an appropriate hearing on the union's petition for designation of a representative, which, under the statute,

---

[2]Warehouse Employees Union v. Forman Ford & Co. 220 Minn. 34, 18 N. W. (2d) 767; State ex rel. Dison v. Hanson, 248 Minn. 87, 78 N. W. (2d) 679.

he was not compelled to do but which in his discretion he might do. He took a secret ballot of the employes, which, also, he was not obliged to do under the act but which in his discretion he might do. The reason for calling an election was to insure a free choice of a bargaining agent without intimidation by either side. As stated, *the conciliator was not obliged to hold a hearing or order an election. He could have certified without either."* (Italics supplied.)

It should be noted that a clear majority of the employees composing the designated unit had signed authorization cards naming the union as their representative for bargaining purposes. We find nothing in the record which would indicate that there is any doubt that these authorization cards represented the free and intelligent expression of the choice of the majority of the employees. In Warehouse Employees Union v. Forman Ford & Co. 220 Minn. 34, 43, 18 N. W. (2d) 767, 771, in discussing the significance of authorization cards under circumstances where the use of the secret ballot as an aid in the selection and designation of a bargaining agent had failed, we said that the:

"* * * Conciliator adopted another 'suitable method' to ascertain such representative. Representation cards had been signed by the majority of the employes eligible to vote. Thus, before the election, at the outset of these proceedings, the majority of the employes had selected the union as its representative. The use of such cards as the basis for ascertaining the representative for collective bargaining, under the facts of this case, would certainly be the adoption of a 'suitable method' to that end."

■ The remaining issue raised by the appellant concerns the constitutionality of § 179.16, subd. 2. We understand appellant's position to be that this section of the statute is unconstitutional as an improper delegation of legislative power to the labor conciliator. The employer asserts:

"This broad power given to the Conciliator is so broad that it is unreasonable, and the Conciliator is given the power of the executive, legislative and judicial branches of the state government.

\* \* \* \* \*

"The statute granting this power should be held unconstitutional as

an unlawful and unreasonable delegation of power by the legislative to an administrative officer, is not definite and does not limit the powers conferred."

It is well settled that the legislature may not delegate truly legislative power but that certain legislative functions may be delegated in carrying out the general provisions and policies of legislative mandates.[3] This court has often upheld legislative delegation of functions to various administrative bodies. In Lee v. Delmont, 228 Minn. 101, 113, 36 N. W. (2d) 530, 538, we said:

"* * * If the law furnishes a reasonably clear policy or standard of action which controls and guides the administrative officers in ascertaining the operative facts to which the law applies, so that the law takes effect upon these facts by virtue of its own terms, and not according to the whim or caprice of the administrative officers, the discretionary power delegated to the board or commission is not legislative. * * *

\* \* \* \* \*

"The policy of the law and the standard of action to guide the administrative agencies may be laid down in very broad and general terms. * * * What is a sufficiently definite declaration of policy and standard obviously varies in some degree according to the complexity of the subject to which the law is applicable."[4]

Also, in Johnson v. Richardson, 197 Minn. 266, 273, 266 N. W. 867, 871, we said:

"* * * The tendency is to hold an act not to be a delegation of legislative power in violation of the constitution when the legislature has defined the general policy of the act as far as is reasonably possible and

---

[3]Visina v. Freeman, 252 Minn. 177, 199, 89 N. W. (2d) 635, 653; see, Minn. Const. art. 3, § 1.

[4]The court here cited New York Central Securities Corp. v. United States, 287 U. S. 12, 53 S. Ct. 45, 77 L. ed. 138, in which the standard of "in the public interest" was held to be a sufficient standard to guide the Interstate Commerce Commission. See, also, Reyburn v. Minnesota State Board of Optometry, 247 Minn. 520, 526, 78 N. W. (2d) 351, 356, where "unprofessional conduct" was considered to provide a sufficient guide to the Board of Optometry in the discipline of its licensees.

has left to the administrative bodies the adaptation of such policy to the peculiar varying conditions."[5]

Section 179.16, subd. 2, clearly requires the conciliator to decide representation questions in that manner which will "insure to employees the full benefit of their right to self-organization and to collective bargaining and otherwise to effectuate the purpose of this chapter, * * *." This general statement of policy is a sufficient standard to guide the labor conciliator in his discretion in choosing which of the alternative methods he will adopt. Although the provision authorizing him to use "any other suitable method to ascertain such representatives" is concededly a broad grant of discretion to the conciliator, we are not prepared to say that the legislature was wrong in thinking that such broad authority was necessary.

A more concrete and definite standard than those provided by § 179.16, subd. 2, would be difficult, if not impossible, to formulate and impracticable in that a rigid standard could well destroy the administrative flexibility necessary to effectively carry out the legislative purpose in enacting the labor relations law.[6] For example, although election is apparently the most frequently used of the alternative methods,[7] it would be of little value to conduct an election after an employer has improperly interfered with the employees' right of free choice in representation matters. Other situations could well arise for which the legislature could not adequately provide by precise language, but which in their general statement of policy would guide the administrative body to the most appropriate choice. Furthermore, the rights of interested parties are fully protected from arbitrary and capricious

[5]See, also, Fairview Hospital Assn. v. Public Bldg. Service Union, 241 Minn. 523, 544 to 547, 64 N. W. (2d) 16, 30 to 31, where sufficient standards were found in general statements of the policy of the Minnesota Labor Relations Act; Butler v. Commonwealth, 189 Va. 411, 53 S. E. (2d) 152; Matter of International Ry. Co. v. Public Service Comm. 264 App. Div. 506, 36 N. Y. S. (2d) 125, affirmed without opinion, 289 N. Y. 830, 47 N. E. (2d) 435.

[6]See, Matz v. J. L. Curtis Cartage Co. 132 Ohio St. 271, 281, 286, 7 N. E. (2d) 220, 225, 227.

[7]See, Note, *Certification of a Bargaining Representative Under the Minnesota Labor Relations Act,* 38 Minn. L. Rev. 827, 830.

action on the part of the conciliator by the right of review on certiorari and appeal to this court. If the labor conciliator would abuse his discretion in some way, the court is available to rectify such wrong.[8]

Since we find that the record reasonably supports the action of the conciliator in certifying the union as the bargaining representative for the production and delivery employees, it is unnecessary to discuss the issue relating to unfair labor practices.

Affirmed.

___

[8]See, Jenner v. City Council of City of Covina, 164 Cal. App. (2d) 490, 331 P. (2d) 176. For an excellent discussion of this area of the law, see 1 Davis, Administrative Law Treatise, §§ 2.10 and 2.15.