SWIFT COUNTY–BENSON
HOSPITAL, Appellant,

v.

STATE of Minnesota, BUREAU MEDIA-
TION SERVICES, Paul W. Goldberg,
Director, and American Federation of
State, County, and Municipal Employ-
ees, Council 65, Respondents.

No. C3–84–700.

Court of Appeals of Minnesota.

Nov. 27, 1984.

Charles F. Bisanz, Jr., St. Paul, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Bradley Engdahl, Asst. Atty. Gen., Bureau of Mediation Services, State of Minn., St. Paul, for State of Minn., Bureau Mediation Services, Paul W. Goldberg, Director.

Gregg M. Corwin, St. Louis Park, for American Federation of State, County, and Municipal Employees, Council 65.

Heard, considered, and decided by SEDG-WICK, P.J., and HUSPENI and NIEREN-GARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Swift County-Benson Hospital appeals from a decision of the Minnesota Bureau of Mediation Services (the Bureau) finding the hospital guilty of unfair election practices prior to an election by certain hospital employees. The election was to determine if the American Federation of State, County and Municipal Employees, Council No. 65 (AFSCME) would be certified as the exclusive bargaining representative of those employees. We affirm.

## FACTS

Benson-Hospital is a charitable hospital whose labor relations are subject to the Minnesota Labor Relations Act, Minn.Stat. §§ 179.01–179.17 (1982) which is administered by the Bureau.

In October 1983, AFSCME petitioned the Bureau to represent licensed practical nurses (LPNs) and nursing assistants of the hospital. Thereupon, the Bureau issued a cease and desist order requiring the hospital to maintain the status quo with respect to wages, hours and existing conditions of employment pending the election. The Bureau routinely issues cease and desist orders as a prophylactic measure designed to reduce the number of elections that may be set aside because of employer conduct.

The election resulted in 24 votes for and 24 votes against AFSCME representation. The Bureau declared AFSCME was not the exclusive representative of the employees and lifted the cease and desist order.

AFSCME requested a hearing and a new election, alleging Benson-Hospital had violated the cease and desist order by (1) eliminating overtime payment in December for some employees, many of whom were supporting AFSCME; (2) increasing the duties of LPNs by requiring them to hang intravenous medication; and (3) changing the formula used for lay-offs when patient count was down, resulting in only nursing aids being laid off pending the cease and desist order. AFSCME alleged this conduct of Hospital was designed to intimidate their employees who would be voting on union representation.

Benson-Hospital claims these actions were taken to effect certain hospital policies regarding overtime, staffing and hanging of intravenous solutions that had been adopted before AFSCME filed its petition for representation.

The Bureau's director found that Benson-Hospital, in enforcing these policies for the first time during the pendency of an election, created a "coercive influence upon employee rights to self determination" and set aside the election, ordering a new one. After a second election, AFSCME was certified as the exclusive representative of the hospital employees. Benson-Hospital contends the Bureau's director exceeded his authority in attempting to change the hospital's "business as usual" practices and in establishing different terms and conditions of employment pending the election.

## ISSUES

1. Did the Bureau's director exceed his authority in ordering a new election?

2. Was a cease and desist order of the Bureau requiring Benson-Hospital to maintain its existing working conditions violated when it implemented work policies adopted prior to the issuance of the order?

3. Did such conduct by Benson-Hospital constitute unfair election practices prior to

an election on union representation so as to require a new election?

4. Were the findings of the Bureau of multiple violations of its cease and desist order arbitrary, capricious and unsupported by substantial evidence?

## ANALYSIS

### I

■ This is a case of first impression in that a director of the BMS has, in the case of a tie vote, ordered a new election for purposes of determining union representation for hospital employees. Generally, the director would set aside the first election and certify the union as the exclusive bargaining representative without another election. *See Warehouse Employees Union, Local No. 359 v. Forman Ford & Co.,* 220 Minn. 34, 18 N.W.2d 767 (1945). The director believed a new election would be less onerous to the hospital than unilaterally certifying AFSCME as the exclusive bargaining representative. If the Bureau could have set aside the election and unilaterally certify AFSCME, there is no cogent reason why it cannot order another. Benson-Hospital cannot complain. A second election gave the hospital a second, otherwise unavailable, chance to campaign.

### II

■ In deciding whether to set aside a certification election, the Bureau must determine whether there has been "any unfair interference with the election to the extent of preventing a free choice on the part of the employees." *In re Amalgamated Food Handlers, Local 653–A,* 244 Minn. 279, 286, 70 N.W.2d 267, 272 (1955).

The union contends Benson-Hospital initiated certain employment practices in the pre-election period designed to interfere with the employees' free choice. Among those were (1) refusal to pay overtime to the nursing staff for the first and only time; (2) laying off all nursing assistants during the pendency of the election and significantly reducing LPN's hours (LPNs and nursing assistants are the largest group of employees petitioning for the union); and (3) requiring LPNs to hang intravenous solutions. Benson-Hospital claims these were policies determined far in advance of the petition for union representation.

As to the first charge, Benson-Hospital claims it adopted its policy to operate the nursing staff within budget before the cease and desist order was issued, and that economic necessity compelled this action.

There was no question that at the time the hospital hired a Director of Nursing in May 1983 with instructions to control the nursing budget the nurses payroll was already over budget. However, nothing was done about this deficit until December, one month before the election, when overtime pay was unilaterally denied to 30 nurses, mostly LPNs and nursing assistants, even though they were entitled to overtime pay.

■ The director's findings of fact will not be set aside if supported by substantial evidence. The record as a whole supports the director's finding that the timing in enforcing the so-called overtime policy not only violated the cease and desist order, but created a work environment not conducive to a valid election.

As a defense to the second charge of improper lay-offs, the hospital points to the belief of the new nursing director that the hospital was overstaffed with nurses. Despite that belief, the record clearly shows that she hired nine new registered nurses and didn't institute a policy of laying off nursing aids first until November 1983, after the petition for union representation had been filed. The timeliness of this policy enforcement created an environment which could reasonably be found inconsistent with a valid election.

Finally, Benson-Hospital's nursing director acknowledged that the State Board of Nursing requires LPNs to be trained before changing intravenous solutions. Not only were the LPN's not trained, but many of them testified that changing these solutions without additional training frightened them. Some, in fact, refused to do so.

Before the cease and desist order took effect, LPN's were not even allowed to hang intravenous medications. This sudden demand of LPN's to change intravenous solutions again violated the cease and desist order of the Bureau's director in such fashion as to suggest an attempt by Benson-Hospital to influence the original election.

## DECISION

 Benson-Hospital's changes in the terms and conditions of employment of those employees seeking union representation by an election so violated the cease and desist order of the BMS director as to affect the integrity of the election process and the employees' freedom of choice. We affirm.